RAÚL H. URRUTIA ET AL., demandantes y recurridos, *v*. AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS DE PUERTO RICO ET AL., demandados y recurrentes.

*Número:* R-73-351      *Resuelto:* 4 de abril de 1975

644

*Vicente Santori Coll* y *Jaime Sifre Rodríguez,* abogados de las partes recurrentes; *Quetglas, Vázquez & Subirá,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

El 30 de marzo de 1971, mientras la codemandante Alba M. Bernart de Urrutia conducía su automóvil hacia el trabajo, un compresor propiedad de la recurrente, Autoridad de Acueductos y Alcantarillados de Puerto Rico, se desprendió de su remolque e hizo contacto leve por la parte lateral en que ella estaba. Durante el incidente sintió la sensación natural de que iba a ser aplastada por el compresor, aun cuando en definitiva no sufrió daño físico alguno. La prueba sobre su comportamiento posterior fue conflictiva, no obstante resulta incontrovertido que se comunicó telefónicamente con su esposo, el co-

demandante Raúl H. Urrutia, quien luego de trasladarla a una oficina gubernamental, la condujo finalmente a su trabajo hasta que pasó a recogerla a su salida por la tarde.

Debido a su estado de intranquilidad e insomnio durante la noche y haber sufrido un mareo en el trabajo en horas de la tarde del otro día, fue examinada en las oficinas de la Dra. María Teresa Berio quien en vista del estado catatónico o letárgico que evidenciaba, recomendó su hospitalización inmediata; siendo ingresada en el Hospital San Jorge con síntomas principales de parálisis en las piernas y dolor de cabeza. En dicha institución fue examinada y tratada por varios facultativos concluyéndose ausencia de lesión física o neurológica y diagnosticándose una Reacción de Conversión Histérica o Reacción de Conversión reflejada físicamente en la parálisis de las extremidades, caídas al piso acompañadas de episodios de mareo, inconsciencia, insomnio y fuertes dolores de cabeza. Fue dada de alta el 12 de abril de 1971 sin mejoría, continuando bajo tratamiento de psico-terapia con el Dr. José H. Rivera Maldonado hasta fines de junio. Con anterioridad al 4 de mayo se había reintegrado a su trabajo secretarial. Desde el inicio del espisodio de conversión y durante dicho período mantuvo un estado de dependencia total hacia su esposo, no pudiendo valerse por sí sola en las gestiones del hogar—como madre y esposa—ni en su cuidado personal. No hay evidencia que sugiera que al presente no se encuentra recuperada.

En sentencia por daños y perjuicios reclamados en causa de acción fundada en los hechos antes relacionados, el Tribunal Superior, Sala de San Juan condenó a la Autoridad recurrente a satisfacerle $7,000.00; $3,000.00 a su esposo, $565.80 en daños especiales y $1,000.00 en concepto de honorarios de abogado.

En sus escritos y en la vista oral celebrada el 17 del mes pasado se señalan y se argumentan por las partes cinco (5) errores que giran esencialmente sobre la relación causal, el monto de daños y la concesión de honorarios.

Un análisis sereno de la prueba testifical y documental presentada, nos convence de que la codemandante recurrida había padecido de episodios de conversión histérica con anterioridad al accidente y de que éste sólo propició que se agravara su condición mental. No podemos descartar la evidencia escrita en récords médicos—consignada en virtud de declaraciones e información contemporánea[1] al suceso acaecido, brindada por su esposo a varios facultativos—indicativa de que ella somatizaba[2] con anterioridad al accidente debido a deficiencias de su personalidad y conflictos emocionales preexistentes que se manifestaban en padecimientos de dolores de cabeza semanales desde hacía años, carácter fuerte y escenas tirándose al piso, moviéndose y gesticulando durante discusiones. Tales episodios no constituían una somatización *leve*, como erróneamente los caracterizó el tribunal recurrido, sino más bien síntomas serios y dramáticos del estado de conversión que ella manifestaba como historial previo al 30 de marzo de 1971.

Aun cuando la prueba aportada por los peritos de cada una de las partes en algunos extremos fue conflictiva, su estudio integral nos convence de la existencia de relación causal entre el episodio por lo cual la codemandante fue hospitalizada y el incidente a que estuvo expuesta; ello constituyó el factor básico que precipitó su estado catatónico inicial y la reacción

---

[1] Consúltese *García v. A.F.F.*, 103 D.P.R. 356 (1975).

[2] T.E. fechada 20 de diciembre de 1972, págs. 85 y 86. El término "somatizar" es reconocido en la psiquiatría moderna como sinónimo de conversión, descriptivo de aquella sintomatología física o corporal con génesis en una causa neurótica profundamente acentuada. 2 Schmidt's *Attorney's Dictionary of Medicine*, pág. 768 (1974); Salvat: *Diccionario Terminológico de Ciencias Médicas*, pág. 1122 (Octava edición); *Dorland's Illustrated Medical Dictionary*, pág. 1267 (vigésimotercera edición). Sobre el tema de Reacción de Conversión Histérica la literatura es prolífera; consúltese: XI *The Cyclopedia of Medicine, Surgery, Specialties*, 647 (rev. ed. 1974), F. A. Davis Company.

Además véase el escolio 1, pág. 495 del caso *Concepción Guzmán*, supra.

de conversión aguda manifestada en la parálisis. *Concepción Guzmán* v. *A.F.F.*, 92 D.P.R. 488, 501 (1965).

Sin embargo, no podemos compartir el criterio del tribunal a quo, como tampoco compensar pecuniariamente la condición física y mental que éste considera probada, al consignar que ella ". . . luego del accidente, padece de insomnio, irritabilidad, intranquilidad y nerviosismo constante así como dolores de cabeza." No podemos atribuir causalidad al incidente habido por síntomas idénticos existentes con anterioridad manifestados desde hacía años. *Concepción Guzmán*, supra, pág. 504. Lo expuesto nos lleva a la determinación de la compensación que debemos reconocer a los demandantes recurridos por daños físicos y mentales.

Es difícil, por no decir angustioso, la gestión judicial de estimación y valoración de daños, evidenciado ello en muchos dictámenes judiciales del pasado y los disensos que esporádicamente se producen en foros adjudicativos colegiados, como este Tribunal, animados todos sus integrantes por realizar con excelencia y a cabalidad la misión encomendádale de impartir justicia. Bajo la fórmula amplia de responsabilidad consagrada en el Art. 1802 del Código Civil (31 L.P.R.A. sec. 5141), no existe una tabla o computadora electrónica que recoja todos los elementos y premisas inarticuladas que nutren la valoración del dolor físico y mental humano y permita, mediante la aplicación de unas teclas o el oprimir unos botones, obtener el resultado final apropiado. Esta función descansa sobre el ejercicio discrecional prudente, juicioso y razonable del juzgador de hechos animado por un sentido de justicia y de conciencia humana. El contacto con la prueba presentada en el proceso judicial de primera instancia y las impresiones derivadas de la apreciación visual del juez, es la razón básica para que en ausencia de un dictamen imponiendo una cuantía ridículamente baja o exageradamente alta, a la luz de la prueba sobre daños presentada, en nuestra función apelativa, implementemos la norma de abstención judicial fundada en

criterios de estabilidad y de respeto a los tribunales de primera instancia. Empero, señaladas y sometidas a nuestra consideración circunstancias comprobadas que ameritan una modificación de la cuantía, procederemos a ello siguiendo los criterios antes mencionados.

Tratándose de un caso en que los peritos producidos por cada parte sostienen divergencia de criterios en cuanto al origen, causalidad y extensión de la condición de la codemandante recurrida, de fácil percepción resulta en el caso de autos, la dificultad del tribunal a quo de fijar daños, reconociendo en su sentencia original una cantidad para luego aumentarla mediante resolución en reconsideración.

■ Tomando como base el daño realmente atribuible a la demandada recurrente y en vista de la condición preexistente, estimamos razonable disminuir su compensación a la cantidad de $5,000.00 que se reduce a $4,000.00 por disposición de la Sec. 8 de la Ley de Protección Social por Accidentes de Automóviles de Puerto Rico (9 L.P.R.A. sec. 2058). Respecto a su esposo Raúl H. Urrutia, consideramos la cantidad de $1,000.00 razonable, sin que le sea aplicable deducción alguna de la ley especial citada, como erróneamente concluyó el tribunal sentenciador, en virtud de nuestros pronunciamientos en el caso de *Coira Luquis* v. *De Jesús Rosas*, 103 D.P.R. 345 (1975).

■ Igualmente se cometió error al condenarse a la Autoridad recurrente a satisfacer $565.80 en concepto de gastos médicos probados luego de deducida la suma de $2,000.00 que como reducción dispone la Sec. 8(3)(c) de la Ley de Protección Social por Accidentes de Automóviles antes mencionada. El lenguaje de la ley provee que la deducción "... será la suma de $2,000.00 o el importe de los beneficios totales pagados por la Administración, si dicho importe fuere mayor de $2,000.00." Su interpretación lógica implica que cuando un reclamante no se acoge a dicho sistema, *teniendo derecho a ello*, le es oponible válidamente la cuantía mayor en gastos médico-hospita-

larios incurrida fuera del sistema debiendo deducirse la suma total en exceso de $2,000.00.

Concluir lo contrario sería dejar al arbitrio de un reclamante la fijación de indemnización por este concepto al poder optar, sin consecuencia jurídica alguna, el acudir a tratamiento ajeno al sistema de compensación social diseñado haciendo inoperante una de las deducciones fijadas en la ley. Resulta necesario que nuestras decisiones propicien la canalización de agravios y la obtención de remedios a través de los sistemas administrativos establecidos para toda la ciudadanía, descongestionando a los tribunales del proceso de dirimir controversias cuyas soluciones están previstas fuera del ámbito judicial. *Quiñones* v. *A.C.A.A.*, 102 D.P.R. 746 (1974).

■ Respecto a la concesión de honorarios de abogado, la recurrente no incurrió en temeridad, demostrado ello al admitir negligencia luego de utilizados los mecanismos de descubrimiento de prueba y la existencia de la controversia legítima sobre causalidad. Debe eliminarse la suma de $1,000.00 de honorarios de abogado impuesta.

El dictamen vertido dispone de los errores apuntados por la recurrente. Sin embargo, la discusión de tales errores sobre daños se deriva de la pugna de testimonio pericial reflejada en el proceso—que se repite periódicamente en los tribunales del país dilatando y aumentando los costos gubernamentales y de los litigantes relacionados con el trámite judicial, a la par que dificulta la búsqueda de la verdad—nos mueve a adoptar sin mayor dilación una norma jurídica de mayor rectitud y efectividad en el procesamiento judicial puertorriqueño de causas civiles en lo concerniente al testimonio pericial.

La situación no es nueva, pues tiene viejos antecedentes en nuestro sistema de administrar justicia. Un ilustre miembro de este Tribunal, Don Emilio Del Toro Cuebas, compendió elocuentemente hace medio siglo los efectos negativos que experimenta la adjudicación de controversias bajo la hipótesis

controvertida que postula el esclarecimiento de la verdad a base del sistema adversativo pericial:

"Es la eterna historia de la prueba pericial. Testigos instruídos que generalmente ponen su inteligencia y sus conocimientos técnicos al servicio de la parte que los presenta y que constituyen en muchas ocasiones uno de los riesgos mayores que un juez encuentra para impartir justicia." Voto disidente en *Vidal* v. *Porto Rico Railway, Light & Power Co.*, 32 D.P.R. 769, 786 (1924).

No obstante el tiempo transcurrido, tales expresiones continúan teniendo eco ininterrumpido en las salas de justicia en los casos en que la determinación de responsabilidad o de daños se hace depender, por la naturaleza de los mismos, en el testimonio versado de peritos en determinada materia. Así, en *Bahr* v. *Am. Railroad Co.*, 61 D.P.R. 917, 926 (1943) señalamos: "El perito forense, seleccionado por y bajo el control de la corte es sin duda alguna el medio más efectivo para llegar al conocimiento de la verdad."

La literatura en otras jurisdicciones sobre el problema no sólo es abundante(³) sino demostrativa de la necesidad que se establezca un medio efectivo de evitar y eliminar la situación de que los peritos sean o se conviertan en testigos particulares de las partes. Coincidimos con la conclusión del comentarista Wigmore de que el remedio básico descansa en remover la característica de que el perito pertenezca a una parte logrando que su comparecencia y testimonio ante el tribunal sea sin endoso previo a cualesquiera de los litigantes. Tal posición es la única compatible con la función que debe esperarse del hombre de ciencias, la cual, de la obra de Lord MacMillan *Law and Other Things*, reproduce lo siguiente:

"De algo estoy seguro, y es que ningún científico debe jamás ser partidario de una de las partes; puede ser partidario de una opinión en su propia ciencia, si la defiende honestamente; pero jamás debe aceptar pago por abogar un punto de vista particular meramente porque éste representa el interés del litigante que le

---

(³) II Wigmore, *Evidence*, págs. 644, 656, sec. 563 (tercera edición); McCormick, *Evidence*, págs. 34–39, sec. 17 (1954).

ha contratado para que lo sostenga. Hacerlo es prostituir la ciencia y perpetrar un fraude a la administración de justicia." II Wigmore, *Op. Cit.;* pág. 647 (traducción nuestra).

Aun cuando reconocemos la respetabilidad de muchos profesionales, estimamos que el sistema adversativo desalienta la comparecencia de muchos testigos periciales capacitados y honestos cuyos testimonios contribuirían en mayor grado a la corrección y certeza de los fallos judiciales.

■ La facultad inherente que posee todo tribunal de compeler la citación de testigos periciales ajenos a los de las partes, con sujeción a aquellas condiciones que discrecionalmente considere apropiadas—incluyendo el disponer su compensación por uno o ambos litigantes—está ampliamente reconocida jurisprudencialmente:

"No obstante, a causa de necesidad, los tribunales tienen algún poder inherente en el campo del procedimiento; es decir, el poder de suplir tal procedimiento bien cuando éste no existe o bien cuando inadecuadamente se fija por estatuto, siempre y cuando que el mismo no sea inconsistente con las disposiciones de ley. Y este Tribunal ha resuelto que en Puerto Rico los vacíos de procedimiento pueden cubrirse mediante decisiones judiciales a virtud de los artículos 7 del Código Civil y 36 del Código de Enjuiciamiento Civil." *González* v. *Tribunal Superior,* 75 D.P.R. 585, 619 (1953).

Véanse además: 95 A.L.R.2d: Anno: *Expert Witness—Appointment by Court,* págs. 390–407; Sink, John M.: *The Unused Power of a Federal Judge to Call His Own Expert Witness,* 29 So. Cal. L. Rev. 195–214 (1956); Wigmore, *op. cit.* pág. 270, sec. 2484.

Emana de una obligación que trasciende la concepción arcaica y desacreditada de que el juez es un mero espectador de la pugna judicial comparable al inexpresivo rostro del jugador de cartas (*poker face*), que se nutre del respeto y la estima propia que deben poseer los jueces en el empeño de cumplir cabalmente con el precepto moral y ético de que en ". . . todo

momento y por sobre toda otra consideración, sus actuaciones han de auspiciar el descubrimiento de la verdad como base esencial para impartir la justicia que de él se espera." Canon V de Etica Judicial; *Pueblo* v. *Pabón*, 102 D.P.R. 436 (1974).

■ Irrespectivamente de que resulta inaplazable la adopción y aprobación final de unas nuevas reglas de evidencia en las cuales se incorporen los principios modernos sobre el particular y se disponga un cuerpo de normas integradas aplicables a causas civiles y criminales, la consecución de un sistema justo, rápido, económico y eficiente nos compele a establecer la norma de que los tribunales de instancia, en casos civiles apropiados, previa oportunidad a las partes de seleccionar un perito común, procedan a designar el perito o los peritos necesarios para que rindan los informes y presten testimonio sobre aquellas controversias legítimas existentes, cuya presentación de prueba dejada exclusivamente al arbitrio de las partes, demoraría la solución de casos y aumentaría sus costos en detrimento de una pronta adjudicación.

Confrontado el poder inherente que posee este Tribunal en su función rectora, de pautar y darle contenido máximo al Derecho puertorriqueño, con el principio expuesto en la Regla 71 de Procedimiento Civil de que los tribunales podrán reglamentar procedimientos específicos en cualquier forma que no sea inconsistente con las reglas vigentes u otra disposición de ley, la facultad de nombrar peritos de los tribunales de instancia, podrá ser implementada conforme a los criterios expuestos en las Reglas 403 a 410 del Proyecto de Reglas de Evidencia de 1958.[4]

Por los fundamentos expuestos, *se dictará Sentencia modificando la compensación concedida condenando a la recurrente Autoridad de Acueductos y Alcantarillados de Puerto Rico a satisfacer únicamente las sumas de $4,000.00 y $1,000.00 res-*

---

[4] Véase: 3 *Práctica Forense Puertorriqueña: Evidencia,* págs. 199 a 208 (1964).

*pectivamente a Alba Bernart de Urrutia y Raúl H. Urrutia, las costas del proceso, sin especial condena de honorarios de abogado. Así modificada, se confirma la sentencia del Tribunal Superior, Sala de San Juan de fecha 4 de abril de 1973.*