FEDERICO HERNÁNDEZ DENTON en su carácter de DIRECTOR DE ASERCO, en representación y a nombre de EUGENIO CÁMARA RODRÍGUEZ, WALLACE A. SEDA, VÍCTOR M. D'CRISTINA Y OTROS, demandante y recurrido, *v.* WESTERN PINES CORP., demandada y recurrente.

*Número:* R-73-148      *Resuelto:* 28 de abril de 1975

*Víctor E. Báez,* abogado de la recurrente: *Yusif Mafuz Blanco, Pedro J. Saade Llorens, Wilfredo López Irizarry, Juan M. Láncara Reyes, Pedro Juan Torres Acevedo, Ramiro Agosto Carrasquillo, Samuel Martir Santiago, Mario Batiz Santos* y *José Rubén Gaztambide,* abogados de la Administración de Servicios al Consumidor.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Acordamos revisar la sentencia de *injunction* permanente dictada por el Tribunal Superior, Sala de Mayagüez, contra la recurrente Western Pines Corp., en lo sucesivo *Western,* en el pleito de clases instado por el recurrido F. Hernández Denton como Director del Departamento de Asuntos del Consumidor (DACO), para beneficio de varios consumidores que otorgaron contratos de compraventa con Roma-Vel, Inc., denominada subsiguientemente *Roma,* en el proyecto de urbanización residencial Belmonte I, Mayagüez, Puerto Rico. La sentencia reconoció a varios compradores el derecho a adquirir de *Western,* por precio convenido con *Roma,* no sujeto a cambio, varias residencias en el referido proyecto.

Nuestra disposición del caso exige que consignemos totalmente las determinaciones de hechos del ilustre tribunal sentenciador, las cuales tienen apoyo en la prueba: [1]

"1. Los demandantes perfeccionaron cada uno independientemente y en fechas distintas contratos similares con la Corporación Roma-Vel Inc. mediante los cuales ellos se obligaron a comprarle y ésta se obligó a venderles las casas y solares a que se contrae cada uno de dichos contratos. (Véase párrafo 3 anterior.)

2. Cada uno de esos contratos contiene el precio convenido para la compra venta.

3. Esos contratos en su cláusula 18 dispone que el mismo obliga a las partes, sus sucesores, herederos o causahabientes.

---

[1] Ello dispone del cuarto error discutido por la recurrente en el sentido de que las determinaciones de hecho números 5 y 6 son contrarias a las estipulaciones acordadas, pues aquellas tanto en esencia como en contenido, recogen el lenguage de éstas.

4. Luego de concertados esos contratos con los demandantes la Corporación Roma-Vel Inc. se acogió a un procedimiento de quiebra ante el Tribunal de Distrito de Estados Unidos para Puerto Rico y previa orden de ese tribunal la demandada Western Pines Corp. compró a Roma-Vel Inc. a través del síndico nombrado por el Tribunal Federal los terrenos y edificaciones a que se refieren los contratos mencionados en el hecho primero de estas determinaciones, mediante la escritura número 288 de 7 de diciembre de 1972, ante el notario José A. Lavastida sobre Agrupación, compra-venta y constitución de hipoteca en garantía de precio aplazado.

5. La demandada está dispuesta, y así lo ha hecho saber a varias de las personas que firmaron contratos con Roma-Vel Inc. que está dispuesta a asumir las obligaciones de dichos contratos siempre y cuando los compradores estén dispuestos a pagar los precios que ahora exige por esas propiedades pero no está dispuesta a venderlos al mismo precio pactado con Roma-Vel Inc.

6. La demandada ha hecho circular entre los demandantes un impreso titulado 'Solicitud de Cancelación' en los que induce a éstos a cancelar su opción o contrato del lote o apartamiento que tienen separados en la Urbanización Belmonte y que es objeto del contrato con Roma-Vel Inc. y autorizar a la demandada a disponer libremente del lote o apartamiento de referencia y a admitir que nada tienen que reclamar a la demandada. La prueba demuestra que con ello logró que un gran número de compradores opcionistas cancelaran sus contratos.

7. Mediante la cláusula 7 de la escritura número 288 Western Pines Corp. 'asume expresamente la responsabilidad legal impuesta por las disposiciones del artículo 1483 del Código Civil de Puerto Rico en relación con todas las edificaciones, construidas, vendidas y entregadas desde el día 31 de Julio de 1970 en el proyecto conocido como 'Belmonte' 1 y cualquier responsabilidad exigida bajo las disposiciones aplicables de las leyes y reglamentos de la Administración Federal de Hogares o la Administración de Veteranos, *así como cualquier otra responsabilidad legal impuesta a los contratistas bajo las leyes de Puerto Rico.*' (Página 5 de dicha escritura.)"

A tono con tales hechos, las siguientes conclusiones de derecho fueron formuladas:

"1. A nuestro juicio por virtud de la cláusula y condición número 7 contenida en la escritura número 288 Western Pines Corp. se constituyó en sucesora de Roma-Vel Inc.

2. El artículo 1485 del Código Civil de Puerto Rico 31 LPRA 4126 dispone que:

'El arquitecto o contratista que se encarga por un ajuste alzado de la construcción de un edificio u obra en vista de un plano convenido con el propietario del suelo no puede pedir aumento de precio aunque se haya aumentado el de los jornales o materiales; pero podrá hacerlo cuando se haya hecho algún cambio en el plano que produzca aumento de obra, siempre que hubiese dado su autorización el propietario.'

3. Además, en el contrato firmado entre los demandantes y Roma-Vel Inc., en su cláusula 11 se dispone que 'nada de lo expresado en este contrato será interpretado como una renuncia por parte del comprador de cualesquiera derechos que le son disponibles de acuerdo con el artículo 1483 del Código Civil de Puerto Rico y la ley número 130 del 13 de Junio de 1967.'

En su artículo 10(c)(1) (17 LPRA 510) dicha ley dispone, entre otras cosas, lo siguiente:

(C) El contrato de promesa de compra venta o el de compra venta contendrá con precisión razonable los particulares enumerados en los subincisos (1) al (6) del inciso (B) que proceda y, además dispondrá:

1. Precio cierto que no se podrá aumentar a menos que sea por acuerdo de las partes.

La Ley 130 es una ley de Puerto Rico, de gran interés público, que impone responsabilidad legal a los contratistas, responsabilidad que asumió expresamente la Western Pines Corp. en la cláusula 7 del párrafo 3 de la escritura número 288.

4. Entendemos y resolvemos que por razón de la responsabilidad asumida por Western Pines Corp. en el contrato de compra venta ya citado (la escritura número 288), las disposiciones del artículo 1485 y la ley número 130 (supra) viene obligada a vender a las personas que tenían contrato con Roma-Vel Inc. las casas y solares a que se refiere cada uno de sus contratos, por el precio allí convenido."

La recurrente *Western* señala y discute los siguientes errores, que analizaremos en igual orden: falta de jurisdicción

sobre la materia; falta de capacidad (*standing*) para tramitar el pleito de clase y la concesión de *injunction* sin fianza; y error en la conclusión de que venía obligada a honrar los contratos efectuados sin poder variar el precio de compraventa originalmente pactado por *Roma*.

Bajo el razonamiento de que la corte de quiebras federal autorizó la venta de los terrenos en cuestión, sobre los cuales *Roma* mantiene un interés de veinte por ciento (20%) como acreedora hipotecaria y de que la sentencia tiene el efecto de vulnerar la garantía prestada, se argumenta que el tribunal a *quo* carecía de jurisdicción para entender en la materia.

■ No podemos convenir con este enfoque ya que la acción judicial *no* estaba dirigida contra *Roma*, que era la entidad en el procedimiento de quiebra, sino contra una corporación distinta contra quien se alegó el haber asumido ciertas obligaciones como "contratista". No milita en contra el que la recurrente adquiriera los terrenos en cuestión, y que *Roma* quedara como acreedora con un interés parcial en los mismos, pues tal interés estaba debidamente protegido en virtud de la cláusula tres de la escritura de compraventa que obliga a *Western* a satisfacer a *Roma* la suma de $1,750 al venderse y entregarse por escritura pública cada casa y solar del proyecto. Aun cuando la doctrina vigente señala que la existencia de un interés de un quebrado sobre determinada propiedad, como acreedor hipotecario, sin bien confiere jurisdicción a la corte de quiebra, ésta no es automática ni exclusiva excepto cuando se está ejercitando una acción sobre la hipoteca en sí; 11 Remington, *Bankruptcy;* Sec. 4362, pág. 44 (1953) o cuando la corte la asume, hecho que no obstante el tiempo transcurrido y los planteamientos habidos ante dicho foro, que tengamos conocimiento, no ha ocurrido. El error no fue cometido.

■ Respecto al error que consigna la capacidad del Administrador de DACO para comparecer a instar pleitos de clase como el presente en que está envuelto el interés de unos compradores de unas residencias en un proyecto de construcción,

no debe haber dudas de su facultad. Dos piezas legislativas de vanguardia procesal para la protección de los consumidores puertorriqueños apoyan esta conclusión: la Ley Núm. 118 de 25 de junio de 1971 (32 L.P.R.A. secs. 3341–3344), y la Ley Núm. 148 de 27 de junio de 1968 (23 L.P.R.A. sec. 1001 *et seq.*). Aun cuando ambas convergen hacia un mismo propósito, a saber el reconocimiento del pleito de clases de los usuarios, la segunda autoriza a la recurrida DACO a comparecer para beneficio del ". . . consumidor en general, de grupos de consumidores o de algún consumidor en particular." (23 L.P.R.A. sec. 1005(c).)

Abona lo anterior el historial legislativo y el texto de la Ley Núm. 130 de 13 de junio de 1967 (17 L.P.R.A. sec. 501 *et seq.*), que intenta prevenir y remediar prácticas indeseables en el negocio de la construcción a través de dicho organismo al cual le fueron trasladados los poderes y deberes de la Oficina del Oficial de Construcción en virtud de la Núm. 148 de 27 de junio de 1968 (23 L.P.R.A. sec. 1002). Como parte del diseño administrativo y en el descargo de tal función, no sólo hemos reconocido el poder de adjudicar querellas y dictar órdenes correctivas en el ámbito administrativo, *Hernández Denton* v. *Quiñones Desdier*, 102 D.P.R. 218 (1974), sino el de acudir directamente al foro judicial a cobrar las multas administrativas que imponga utilizando los mecanismos procesales de ley más apropiados, económicos y convenientes: *Pérez Colón* v. *Cooperativa de Cafeteros*, 103 D.P.R. 555 (1975).

Resolvemos que la acción de *injunction* instada en el presente caso contra la recurrente *Western* representa un ejercicio válido de las facultades de DACO en el desempeño de sus deberes y responsabilidades; acción que no queda desnaturalizada por el argumento de la recurrente de que por no haberse vinculado originalmente con los compradores, no incurrió en práctica indeseable. Bajo la alegación de ser la sucesora de la contratante original *Roma*, habida cuenta de su intento de variar posteriormente el precio de compraventa fijado inicial-

mente, nos es difícil llegar a otra determinación que no sea la de que intentó violar lo dispuesto en el Art. 10 (c) (1) de la mencionada Ley Núm. 130 que prohíbe la variación del precio cierto de una compraventa por una urbanizadora, salvo acuerdo entre las partes.

■ Corolario de lo anterior, no erró el ilustre tribunal sentenciador al no exigir de la recurrida DACO fianza para expedir el *injunction*, requisito del cual está exenta por disposición expresa de la Regla 57.3 de Procedimiento Civil vigente. [2]

Resta considerar la corrección de la conclusión del tribunal de instancia en el sentido de que la recurrente *Western* se constituyó en sucesora de *Roma* y como tal viene obligada a honrar los contratos otorgados. [3]

Para sustanciar este error se argumenta, en síntesis, la inexistencia de prueba de que las casas de los consumidores hayan sido construidas, vendidas o entregadas dentro del período visualizado en la escritura de compraventa (31 de julio de 1970 a 7 de diciembre de 1972), ante lo cual éstos no pueden beneficiarse de la cláusula contenida en dicha escritura, [4] que de haberse perfeccionado una compraventa los

---

[2] La naturaleza remedial de la acción de clase para consumidores reconocida en la mencionada Ley Núm. 118 y su interacción con la recurrida DACO, queda manifestada por la intervención que en cualquier transacción judicial a ésta se le confiere según la sección 3 (32 L.P.R.A. sec. 3343).

[3] Al discutir este error, la recurrente aclara que el lenguaje de la cláusula séptima de la escritura de compraventa entre *Roma* y ella, en lo que respecta al alcance de su obligación, debe ceder a lo solicitado y autorizado ante la Corte de Quiebras, a saber de que su obligación fue respecto a ". . . all houses built, sold *or* delivered . . ." y no como se tradujo en la escritura ". . . todas las edificaciones construidas, vendidas y entregadas . . . ." A nuestro juicio la diferencia en la traducción es inmaterial y en última instancia, el texto en inglés, implica una ampliación de su responsabilidad pues se refiere específicamente a *casas* construidas, vendidas o entregadas.

[4] Habiéndose acompañado en la demanda como modelo común a todos los compradores el Exhibit A, copia del contrato de uno de ellos que tiene como fecha 31 de agosto de 1971 y en vista de las estipulaciones acordadas, estimamos que el tribunal de instancia tuvo suficiente prueba para concluir que los contratos fueron otorgados con posterioridad al 31 de julio de 1970.

consumidores tenían que haber acudido a la corte federal; y que resulta inaplicable la norma del Art. 1485 del Código Civil por no haber los compradores demostrado que la recurrente, como arquitecto o contratista, acordó la construcción por precio obligado y con vista a un plano.

El examen detallado del *Contrato de Compraventa* otorgado por los consumidores con *Roma,* nos confirma que se trata de una compraventa perfecta que contiene todos los requisitos necesarios del Art. 1339 de nuestro Código Civil (31 L.P.R.A. sec. 3746). A tal efecto, el documento en cuestión refleja claramente que entre *Roma* y cada uno de los consumidores medió convenio entre las cosa—solar con expresión ·de colindancias y modelo de estructura, y precio cierto pagado· en parte inicialmente y en parte pospuesto—restando meramente la entrega y la formalidad de otorgarse una escritura pública. Siendo ello así, es obvio que la cláusula que nos ocupa, mediante la cual la recurrente expresamente asumió obligaciones que la ley impone a los contratistas, beneficia y tiene el alcance de cubrir aquellas personas que habían otorgado con *Roma* contratos de compraventa desde el 31 de julio de 1970.

■ El lenguaje de dicha cláusula se extiende, como correctamente concluyó el tribunal de instancia, a la prohibición de variar el precio, establecida en el artículo 1485 mencionado, no siendo argumento en contrario la ausencia de prueba testifical sobre precio alzado con vista a un plano, puesto este hecho fue establecido por los propios términos del Contrato de Compraventa. Así, en la cláusula *primera* se pactó la ubicación de la casa, el tipo a construirse, ello de ". . . conformidad sustancial con el plano del tipo arriba indicado . . ." y en la *segunda* "[la] VENDEDORA manifiesta y EL COMPRADOR reconoce que con anterioridad al otorgamiento de[l] contrato le ha suplido o le ha ofrecido al COMPRADOR o su representante para su inspección, toda la información pertinente relativa a este Contrato, tal como el plano preparado por la VENDEDORA para el desarrollo del proyecto antes men-

cionado, su localización exacta, *los planos y especificaciones para la construcción de la casa, el tipo, fachada,* método de construcción. . . ." (Énfasis suplido.) Resolvemos que se demostró mediante prueba documental la aplicabilidad del artículo del Código Civil y de que este error no fue cometido.

Cualquier determinación en contra implicaría que estaríamos condenando nuestro Código Civil a una existencia estática e inmutable, propiciando su muerte por asfixia de hermenéutica judicial resultante del inexorable transcurrir del tiempo; posición que no hemos de adoptar por oponerse a nuestra responsabilidad de pautar el Derecho Civil en base a los nuevos horizontes que exige nuestra vida contemporánea. Debemos tener presente que el Art. 1485 de dicho cuerpo, al igual que otros que tratan sobre la responsabilidad del contratista, hay que analizarlo a la luz de las nuevas técnicas de construcción en masa, la redacción de contratos que ello implica y el tráfico de compraventas que genera una sociedad en constante cambio, en armonía con la tendencia filosófica plasmada en las leyes promulgadas para proteger al consumidor de prácticas y sutilezas, aparentemente legales, pero que entrañan el germen y vicio de ilegalidad o inmoralidad.

*La sentencia será confirmada.*

El Juez Asociado, Señor Martín no intervino.