ROBERTO MELÉNDEZ ET AL., demandantes y recurridos, *v.* LEVITT & SONS OF PUERTO RICO, INC., codemandada y recurrente; JOSÉ MANUEL FAHAR Y OTROS, demandantes y recurridos, *v.* LEVITT & SONS OF PUERTO RICO, INC., codemandada y recurrente; JOSÉ LINO SOTO Y OTROS, demandantes y recurridos, *v.* LEVITT & SONS OF PUERTO RICO, INC., codemandada y recurrente.

*Número:* O-75-538     *Resuelto:* 4 de mayo de 1976

798

*O'Neill & Borges* y *Raúl E. González Díaz,* abogados de la recurrente; *Juan T. Peñagarícano, Jr.,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

El recurso de epígrafe nos permite examinar la autoridad constitucional y la capacidad del Poder Judicial de afrontar y superar, con pragmatismo judicial y al amparo de nuestro

derecho vigente, algunos de los múltiples obstáculos y variados problemas que la litigación moderna conlleva cuando se reclaman derechos por un número sustancial de ciudadanos.

El incidente procesal que genera nuestra intervención se origina en una Orden del Tribunal Superior, Sala de Bayamón, de fecha 8 de octubre de 1975, en varios casos consolidados. Para una total comprensión de nuestra decisión, a continuación copiamos dicha Orden:

"Se trata de las reclamaciones de más de 300 compradores[*] de casas en la Urbanización Levittown de Toa Baja quienes alegan daños por alegados vicios de construcción. Luego de varios incidentes el Tribunal a los fines de acelerar los procedimientos y evitar gastos innecesarios a las partes nombró al Lic. Francisco Espinosa Robledo para que éste actúe como Comisionado Especial mediante la siguiente orden:

'ORDEN—Celebrada una reunión con los abogados de las partes, el día 29 de julio de 1975, oídos sus puntos de vista se ordena lo siguiente:

1. El Comisionado Especial, Lcdo. Francisco Espinosa, Hijo a la brevedad posible citará a las partes para una vista e inspección y evaluación de los vicios de construcción de la residencia del demandante, Luis A. de Jesús Cintrón.

2. Se conceden veinte (20) días improrrogables a la demandada para que informe al Tribunal y a la parte demandante el nombre del perito que ha seleccionado para inspeccionar las casas de los demandantes, enumerar y evaluar el costo de reparación en el mercado de todos los vicios de construcción, si algunos existieren en las casas de los demandantes.

3. Los demandantes tendrán ocho (8) días improrrogables para aceptar o rechazar dicho perito.

4. Se conceden veinte (20) días a la demandada para traer al pleito a terceros demandados.

Notifíquese a los abogados de las partes y al Comisionado Especial, Lcdo. Francisco Espinosa, Hijo.'

---

[*]La peticionaria Levitt and Sons of Puerto Rico, Inc., expone en su Memorial que a la fecha de la presentación del recurso se han consolidado un total de 504 reclamaciones.

Comenzó el Tribunal gestiones para lograr que las partes acordaran el nombramiento de un Perito para que éste lleve a cabo una inspección de todas las estructuras y someta al Comisionado Especial todas sus conclusiones sobre los vicios de construcción y el costo de reparación de los mismos. La parte demandante ha informado que acepta el Perito que nombre el Tribunal. La demandada Levitt & Sons of Puerto Rico Inc., luego de varias solicitudes de prórroga radicó una moción el día 10 de septiembre de 1975 en la que informa que todos los Peritos que ha conseguido no son aceptables por el problema del costo de sus servicios, dada la gran cantidad de estructuras envueltas en este pleito. Informa dicha demandada que dichos Peritos además de cobrar por el Informe cobrarían por su comparecencia al Tribunal.

Propuso finalmente al Tribunal encomendar la labor de inspección de las estructuras a un funcionario de la Oficina Regional de Bayamón del Departamento de Asuntos del Consumidor.

El Tribunal, luego de hacer las gestiones, concluyó que el único funcionario que tiene dicha Oficina es un ingeniero mecánico que aparentemente no está debidamente cualificado para determinar vicios de construcción y costos actuales de reparación de las casas en controversia. Además informó dicha Oficina que no puede prescindir de los servicios de dicho funcionario, dado el alto número de asuntos que se radican en la misma.

El Tribunal luego de varias gestiones y con vista de lo resuelto por el Honorable Tribunal Supremo de Puerto Rico en el caso de *Raúl H. Urrutia y otros v. Autoridad de Acueductos y Alcantarillados de Puerto Rico y otros,* RCA 1975-69, de fecha 4 de abril de 1975 nombra al Ingeniero Civil Sr. Tomás Viner Alcázar como Perito en este caso para que, siguiendo las instrucciones del Comisionado Especial inspeccione las estructuras, someta un informe que debe contener una lista de los vicios de construcción, si algunos, y el costo actual de reparación de los mismos. El Tribunal, llegó a esta conclusión luego de que el señor Viner Alcázar accedió a que el Tribunal fijara sus honorarios, los cuales en ningún caso excederán de la propuesta más baja recibida por la demandada y para fijarlos el Tribunal tomará en consideración el número de estructuras que sean inspeccionadas.

El señor Viner Alcázar ha actuado como Perito del Tribunal en varios casos y sus servicios han sido altamente satisfactorios

y ha demostrado gran sentido de responsabilidad y competencia.

La demandada depositará en el Tribunal los honorarios del Perito según sean fijados por el Tribunal y en caso de que los demandantes no prevalezcan en sus reclamaciones tendrá derecho la demandada a reclamarlos como costas.

A los fines de que las partes no incurran en gastos adicionales el Informe del Perito será obligatorio para las partes y no será necesaria la comparecencia personal del Perito a declarar ante el Comisionado Especial a menos que una parte lo solicite, lo cual conllevará que deberá sufragar los honorarios por dicha comparecencia, los cuales serán fijados por el Tribunal.

Se conceden 15 días a las partes para que acuerden con el Comisionado Especial Lic. Francisco Espinosa Robledo los honorarios que serán pagados a éste disponiéndose que de no hacerlo el Tribunal los fijará luego de oir a las partes."

Expedimos orden de mostración de causa contra los demandantes en virtud de los siguientes errores señalados y discutidos por la peticionaria:

"1. Erró el Honorable Tribunal de Instancia al proceder a designar un perito para actuar en los casos consolidados ante su consideración, al determinar la compensación del mismo, al imponerle a la demandada la obligación de pagar sus honorarios y al determinar que el informe del perito es obligatorio para las partes, sin la celebración de una vista pública en la que las partes pudieran aportar la prueba que fuese pertinente y plantear las cuestiones legales que correspondan.

2. Erró el Honorable Tribunal de Instancia al determinar cuál habrá de ser la compensación del perito designado sin haber contado con prueba alguna que respalde dicha compensación.

3. Erró el Honorable Tribunal de Instancia al imponerle a la Recurrente el pago total de los honorarios del perito designado.

4. Erró el Honorable Tribunal al determinar que el informe del perito sería obligatorio para las partes.

5. Erró el Honorable Tribunal al determinar que la comparecencia personal del perito a declarar ante el Comisionado Especial no será [sic] necesaria y que la parte que solicite dicha comparecencia deberá pagar los honorarios del perito.

6. Erró el Honorable Tribunal de Instancia al designar un perito en base a lo resuelto en el caso de *Urrutia* v. *Autoridad*

*de Acueductos y Alcantarillados,* Opinión del 4 de abril de 1975. (Referencia Colegio de Abogados 1975-69).''

Los recurridos han comparecido y se oponen a las pretensiones de la peticionaria argumentando que la orden es sumamente justa y razonable en vista del historial del caso.

Invertiremos el orden de análisis para comenzar con el último error señalado, ya que los primeros descansan sobre la validez de la norma general señalada en *Urrutia* v. *A.A.A.*, 103 D.P.R. 643 (1975), en el sentido de que los tribunales tienen poder para designar peritos judiciales en casos apropiados.

La parte peticionaria—haciendo constar su conformidad con los pronunciamientos de dicho caso en torno al aspecto de la opinión pericial y en lo referente al Proyecto de Reglas de Evidencia—nos pide su revocación bajo el fundamento de que ello constituye un ejercicio *ultra vires* de "legislación judicial" que trasciende los límites de nuestra Constitución. En apoyo de tal contención cita e interpreta restrictiva y literalmente el lenguaje de la Sec. 6 del Art. V de la Constitución[1] y la Sec. 2 de la Ley Núm. 11 de 24 de julio de 1952, según enmendada, denominada Ley de la Judicatura (4 L.P.R.A. sec. 2), y pone como ejemplo, las cuatro ocasiones en que durante los años 1958, 1959, 1960 y 1961 este Tribunal adoptó y remitió a la Asamblea Legislativa un Proyecto de Reglas de Evidencia que fueron expresamente desaprobadas. Nos señala que los casos de *Urrutia,* supra, y

---

[1] Dispone así:

"El Tribunal Supremo adoptará, para los tribunales, reglas de evidencia y de procedimiento civil y criminal que no menoscaben, amplíen o modifiquen derechos sustantivos de las partes. Las reglas así adoptadas se remitirán a la Asamblea Legislativa al comienzo de su próxima sesión ordinaria y regirán sesenta días después de la terminación de dicha sesión, salvo desaprobación por la Asamblea Legislativa, la cual tendrá facultad, tanto en dicha sesión como posteriormente, para enmendar, derogar o complementar cualquiera de dichas reglas, mediante ley específica a tal efecto." (L.P.R.A. Vol. 1, págs. 259–260.)

*Pueblo* v. *Padilla Arroyo,* 104 D.P.R. 103 (1975), desatienden tales actuaciones legislativas y son ilustrativos de una peligrosa determinación del Tribunal de poner en vigor "las Reglas en forma parcial", facultad constitucional que carecemos y cuyo reconocimiento "equivaldría a arrumbar, mediante la utilización de un enfoque expansivo del poder constitucional de este Honorable Tribunal, el delicado equilibrio y la aplicación concreta del sistema de frenos y contrapesos constitucionalmente establecido en esta área."

En torno a los orígenes históricos de la doctrina del poder inherente de los tribunales de adoptar reglas de procedimiento y evidencia nos refiere a lo expuesto en las opiniones mayoritaria y disidente del caso de *González* v. *Tribunal Superior,* 75 D.P.R. 585, 628 (1953), y en contra de dicha doctrina argumenta las siguientes proposiciones: la aprobación de tales reglas es una función, por su propia naturaleza, de carácter legislativo; ni jurídica ni históricamente tal doctrina ha tenido vigencia alguna en el sistema puertorriqueño, según coinciden la expresión mayoritaria y minoritaria en *González,* supra; tal doctrina es insostenible en un régimen constitucional como el nuestro, descansando para tal conclusión en la opinión disidente de dicho caso; toda aprobación de normas de procedimiento y de evidencia debe ajustarse al mandato y trámite Constitucional; y el permitir que subsista la norma de *Urrutia,* supra, sobre peritos judiciales, equivaldría al reconocimiento forzoso de que de un "plumazo" podría aprobarse la totalidad del Proyecto de Reglas de Evidencia de 1958, lo cual sería destructivo al sistema constitucional de gobierno. Adicionalmente aduce, como consecuencia no prevista, que *Urrutia,* supra, conflige con lo dispuesto en el inciso 3 del Art. 327 vigente del Código de Enjuiciamiento Civil (32 L.P.R.A. sec. 1461(3)) que preceptúa:

"La parte a cuyo favor se dicte cualquier Sentencia o Resolución final le serán concedidas las costas, las cuales comprenderán los siguientes desembolsos:

(3) Dos (2) dólares por cada testigo y por cada día de asistencia a la Corte, más millaje para ida y vuelta a su residencia; disponiéndose, *que la Corte fijará, atendidas todas las circunstancias,* la compensación razonable por la asistencia de testigos peritos;" (Énfasis suplido.)

A tal efecto sostiene que como la Regla 410 del Proyecto de Reglas de Evidencia confiere discreción a un tribunal para determinar, anticipadamente, si la compensación del perito es o no recobrable como costas, ello ". . . deja sin efecto una ley aprobada por nuestra Asamblea Legislativa . . . empleando [se] la doctrina del poder inherente no solo en forma contraria a . . . [la] Constitución, si que también para imponer soluciones contrarias al derecho legislado."

Finalmente manifiesta su preocupación "por lo que aparenta ser una tendencia reciente de[l] . . . Tribunal de expandir sus poderes . . . ." evidenciado en los casos de *Urrutia* y *Padilla Arroyo,* supra, y el aprobar recientemente la Regla 17 de nuestro Reglamento que alega está en conflicto con la Regla 53.3 de las de Procedimiento Civil de 1958, y la Regla 6 de las de Administración para el Tribunal de Primera Instancia que también sostiene está en abierto conflicto con la Regla 34 (a) de las de Procedimiento Criminal.

## I

Estimamos que el caso de autos es uno apropiado en que se ejemplariza vivamente la sabiduría de la norma de *Urrutia,* supra, en torno a la facultad de los tribunales de designar y nombrar peritos judiciales. La validez intrínseca de que el testimonio del perito sea, en lo posible, la expresión sincera, desinteresada e imparcial de un profesional competente—y no de profesionales rivales cuyas respectivas comparecencias y opiniones de ordinario resultan ser en el interés exclusivo de cada parte—es incuestionable para todo conocedor de un proceso judicial.

■ Tal autoridad es consustancial e inherente al poder de un tribunal de suplir deficiencias y lagunas procesales existentes en las leyes cuando éstas no responden a los imperativos del momento e impiden que el Poder Judicial cumpla a cabalidad con el objetivo que animó a la Convención Constituyente de simplificar el sistema de adjudicar controversias "justa, rápida y económicamente". I *Diario de Sesiones de la Convención Constituyente*, pág. 636.

No milita en contra de esta conclusión el lenguaje de la Sec. 6 del Art. V de nuestra Constitución cuyo alcance y límite fue precisamente aclarado en el documentado caso de *González*, supra. En dicha opinión resolvimos, que en su perspectiva histórica: el poder inherente para adoptar reglas procesales en sus orígenes era de la incumbencia de los tribunales, y que en el siglo XX había surgido un retorno a dicho principio fundamental; que concurriendo con dicha tendencia, algunos tribunales afirmaron que tal facultad era inherente y absoluta al extremo de que el Poder Legislativo estaba totalmente excluido de participar en este campo en virtud de la doctrina de separación de poderes; que históricamente esta última teoría era difícil de sostener; y que analíticamente la exclusión absoluta del Poder Legislativo en el proceso de formulación de normas de procedimiento no había sido una realidad en Puerto Rico antes y después de la Constitución.

■ En cuanto a la autoridad implícita de los tribunales para darles contenido y virtualidad a ciertas normas procesales y de evidencia dijimos:

"No obstante, a causa de necesidad, los tribunales tienen algún poder inherente en el campo del procedimiento; es decir, el poder de suplir tal procedimiento bien cuando éste no existe o bien cuando inadecuadamente se fija por estatuto, siempre y cuando que el mismo no sea inconsistente con las disposiciones de ley. Y este Tribunal ha resuelto que en Puerto Rico los vacíos de procedimiento pueden cubrirse mediante decisiones judiciales

a virtud de los artículos 7 del Código Civil y 36 del Código de Enjuiciamiento Civil. Además, es importante indicar que los estatutos que confieren tales facultades para promulgar reglas y que no fijan normas, no son una indebida delegación de poder legislativo. *Esto es así porque la facultad de proveer el procedimiento para las cortes es una que se goza concurrentemente tanto por los tribunales como por la asamblea legislativa;* por consiguiente, tal estatuto es una retirada del campo del procedimiento más bien que una delegación de poderes."

Y a renglón seguido añadimos:

"Después de una vacilante historia, . . . en Puerto Rico la adopción de reglas por los tribunales descansa ahora sobre bases sólidas. Además de la facultad de la judicatura de suplir procedimiento, a virtud de los artículos 7 del Código Civil y 36[*] del Código de Enjuiciamiento Civil, aquí, como en cualquier otra parte, la facultad judicial de adoptar reglas ha sido reconocida como un retorno a los principios fundamentales y como 'una función propia del Poder Judicial'. *Aún más importante, esta facultad se establece en nuestra Constitución como básicamente inherente a los tribunales y como un poder primariamente judicial más bien que legislativo.*" (Énfasis nuestro.)

▬ No constituye un espectro de Tribunal omnipotente ni contraviene la doctrina de "separación de poderes" y de "frenos y contrapesos" que destruya nuestra forma republicana de Gobierno Constitucional, el que jurisprudencialmente hayamos reconocido la facultad de los tribunales de designar un perito judicial: *Urrutia,* supra; o que hayamos restringido el ámbito del contrainterrogatorio de un acusado—a los fines de impugnar su testimonio y credibilidad—a evidencia de convicciones previas que no sean remotas, *Pueblo* v. *Padilla Arroyo,* supra.

Contrario a la conclusión de la parte peticionaria, "[l]a confección de reglas de evidencia no es faena para la Legislatura sino una esencialmente judicial . . . que ha tenido un mo-

---

[*]El Art. 36 del Código de Enjuiciamiento Civil fue derogado en virtud de la Regla 72 de Procedimiento Civil vigente por cumplir su fin la Regla 71.

desto desarrollo jurisprudencial en nuestra patria." *Pueblo v. Dones*, 102 D.P.R. 118 (1974). Las últimas dos décadas se han caracterizado por un enfoque renovador, aunque lento, tendente a superar el inmovilismo procesal que tradicionalmente ha agobiado la tramitación de causas ante los tribunales. Para lograr inyectarle rapidez a los procesos y facilitar la búsqueda de la verdad—factores básicos en el quehacer de administrar justicia—hemos suplementado jurisprudencialmente, y en limitadas ocasiones, las insuficiencias de las normas vigentes en las reglas de procedimiento civil y criminal y en la Ley de Evidencia en perfecta congruencia con el diseño general constitucional. *Pueblo v. Tribunal Superior*, 101 D.P.R. 133 (1973); *Pueblo v. Ribas*, 83 D.P.R. 386 (1961); *Pueblo v. Dones*, supra; *Pueblo v. Opio Opio*, 104 D.P.R. 165 (1975). Y en el ejercicio de hermenéutica judicial en materia de evidencia, nos hemos referido, como fuente ilustrativa y persuasiva, a diversas reglas del Proyecto de Reglas de Evidencia: *García Negrón v. Tribunal Superior*, 104 D.P.R. 727 (1976); *Pueblo v. López Rivera*, 91 D.P.R. 693, 703 (1965); *Martínez Rivera v. Tribunal Superior*, 85 D.P.R. 1, 12 (1962); *Lugo Ortiz v. Ferrer*, 85 D.P.R. 862, 869 (1962); *Pueblo v. Ramos Cruz*, 84 D.P.R. 563, 569 (1962); *Pueblo v. Aponte González*, 83 D.P.R. 511, 516 (1961); *Pueblo v. Ruiz*, 83 D.P.R. 349, 355 (1961).

■ Para adjudicar satisfactoriamente las cuestiones jurídicas que diariamente se plantean ante este Tribunal, no podemos ceñirnos a un enfoque de infertilidad judicial por temor al pretendido argumento de que ello representa una indebida intromisión en los poderes de las otras ramas de Gobierno. La razón de ser de la doctrina del poder inherente cobra verdadera dimensión al percatarnos que nuestra responsabilidad de propiciar un sistema que solucione los casos ordenada, justa y prontamente, no se satisface a plenitud con trasladar periódicamente el problema al ámbito legislativo; esta área exige un enfoque jurisprudencial dinámico que

propenda a lograr de manera balanceada los propósitos constitucionales enunciados. No puede sostenerse válidamente que el Tribunal esté constantemente obligado a remitir a la Asamblea Legislativa, para su aprobación, toda interpretación jurisprudencial que haga de una norma procesal o evidenciaria al resolver un caso, ello independientemente de que al pronunciarnos en el mismo participemos a *todos los integrantes del sistema de justicia puertorriqueño*—tribunales, abogados y partes—la adecuacidad de la pauta adoptada para casos futuros. Tal tesis violentaría el ejercicio de la función judicial a la par que conllevaría una parálisis *pro tanto* en nuestra responsabilidad constitucional expresa de administrar justicia.

Aclarado el marco y fundamento constitucional (²) de nuestras decisiones en casos como el presente, es de rigor hacer constar que *Urrutia,* supra, no conflige ni deroga el inciso 3 del Art. 327 del Código de Enjuiciamiento Civil que reconoce, como costas la compensación razonable que fije el tribunal por la asistencia de testigos peritos de la

---

(²)De esta perspectiva se desprende que no son atendibles los argumentos en torno a la Regla 17 de nuestro Reglamento y a la Regla 6 de las de Administración para el Tribunal de Primera Instancia *vis a vis* la 53.3 de Procedimiento Civil y 34(1) de Procedimiento Criminal. Ambas fueron adoptadas en virtud de nuestra incuestionable autoridad de reglamentar los trámites procesales: la Regla 17 complementa la 53.3 al especificar los detalles de forma y presentación de documentos en un recurso de revisión, y la 6 modifica el ritual inocuo y absurdo de que el Ministerio Fiscal firme, jure y presente una acusación en sesión pública trasladando tal trámite a la Secretaría del Tribunal. Los fundamentos para la adopción de esta última surgen claramente de una lectura del *Informe de la Comisión para el Estudio de la Fiscalía y la Representación Legal del Estado* sometido en 26 de septiembre de 1974 al Consejo sobre la Reforma de la Justicia en Puerto Rico, págs. 174s–178.

La actuación del tribunal en tales reglas—como en otras análogas—constituye y fue reconocida aun en la disidencia de *González,* supra, por representar un ejercicio de poder dimanante del Tribunal de adoptar ". . . reglas para su organización *interna,* tales, como *registro de causas,* confección de calendarios, *perfeccionamiento de apelaciones,* distribución de tareas entre sus funcionarios; . . . ." Pág. 644. (Énfasis suplido.)

parte victoriosa "atendidas todas las circunstancias". Esta última expresión es clave; implica que bajo el estado actual de nuestro derecho vigente, la compensación de un perito, como costas no es automática *per se* sino que los tribunales deben ponderar juiciosamente su procedencia en virtud de las particularidades en que se presta, evaluando su naturaleza y utilidad conforme las normas que sentamos en el caso rector de *Garriga, Jr.* v. *Tribunal Superior*, 88 D.P.R. 245 (1963). Puede haber situaciones en que el testimonio de un perito producido por una parte sea irrelevante, inmaterial o innecesario, o carezca de la característica de pericia, como consecuencia de las cuales sea procedente denegar compensación en tal carácter. *Sucn. Mangual* v. *Hastings*, 56 D.P.R. 21, 26 (1940).

Existe por tanto, armonía entre el aludido inciso 3 del Art. 327 y el propósito que persigue la Regla 410 del Proyecto de Reglas de Evidencia al dejar a la discreción del tribunal—en casos en que ha designado un perito judicial—la compensación, si alguna, del perito adicional que produzca una parte. "[Se] trata de desalentar el uso de peritos que no sean nombrados por el tribunal, disponiendo que las sumas que se les paguen por concepto de honorarios [discrecionalmente] no sean incluídas en las costas." (Corchetes nuestros) 3 *Práctica Forense Puertorriqueña*, (Comentario a la pág. 208 del Comité Consultivo del Proyecto de Reglas de Evidencia).

## II

Réstanos considerar los méritos de los cinco (5) errores argumentados conjuntamente por la peticionaria. Estos se reducen a los siguientes planteamientos: El tribunal de instancia erró al designar al perito sin celebrar vista; erró al imponerle el pago total de sus honorarios; al determinar la obligatoriedad del informe para las partes; y al decretar que el perito no tendría que declarar ante el Comisionado Especial excepto a solicitud de cualesquiera de las partes, quien en-

tonces vendría obligada a pagar los honorarios por tal comparecencia. Le asiste parcialmente la razón. Veamos.

El enjuiciamiento moderno se orienta hacia la simplificación de los trámites procesales evitando la comparecencia de abogados y partes en cuestiones incidentales. A tal efecto, la Regla 7 de las de Administración para los Tribunales de Primera Instancia establece, como norma general, que toda moción queda sometida para Resolución ". . . sin celebración de vista, a menos que el Tribunal *motu proprio*, o a solicitud de parte, resuelva a su discreción señalarla. . . ." Otra excepción consignada en la propia regla requiere la celebración de vista en aquellas mociones en que la ley así lo exige.

■ En los casos en que no existe precepto de ley mandatorio de vista, corresponde a los tribunales—en virtud de un examen de varios factores, tales como la complejidad o no de las cuestiones planteadas, utilidad de la comparecencia de los abogados o las partes con miras a su más cabal entendimiento o a tomar medidas adicionales sobre trámites necesarios e incidentales, y otros—dar audiencia o denegarla.

En lo concerniente al nombramiento de un perito judicial, en *Urrutia*, supra, dijimos que tal facultad fuera usada "previa oportunidad a las partes de seleccionar un perito común." Tal gestión, de ordinario, puede hacerse sin vista salvo que concurran circunstancias que ameriten el señalamiento de la cuestión para delimitar el ámbito, compensación y otros aspectos de la encomienda al perito.

Los documentos en el caso de autos evidencian que la peticionaria hizo gestiones tendentes a suministrar el nombre de un perito común acorde con una orden del tribunal *a quo* de fecha 3 de junio de 1975 y que desde sus inicios destacó que la mayor dificultad era el alto costo que por concepto de honorarios profesionales ello representaba. Oportunamente cuestionó el pronunciamiento judicial relativo a que los gastos del perito fueran por ella desembolsados por considerarlo injusto indicando que debería tener la oportunidad de contrainterrogarlo.

Además solicitó que el examen pericial se circunscribiera a los vicios alegados por cada reclamante en sus respectivas demandas.

■ A la luz del número sustancial de reclamantes es claro que el costo de la labor de peritaje será alto, lo cual unido a los gastos que conlleva el nombramiento de un Comisionado Especial aumentará notablemente el aspecto económico del litigio; sin embargo, los gastos finales serían mayores de optar cada parte en contratar y solventar aisladamente un perito. Reafirmamos que bajo las normas de *Urrutia*, supra, el caso es apropiado para tal designación y que el tribunal pudo celebrar una vista para oir objeciones, si alguna, al perito designado.

■ Es errónea la determinación del tribunal a quo disponiendo que sobre la peticionaria recaiga exclusivamente el peso de financiar totalmente y a priori los honorarios del perito judicial designado, aun bajo la premisa que de no prevalecer un reclamante, aquella pueda recobrar tal gasto como costa. Obviamente dicha eventualidad está sujeta a unas contingencias impredecibles y no toma en consideración los intereses de todas las partes. Por el contrario, concluimos que el balance justiciero requiere que sobre las partes principales— cada reclamante y la peticionaria—recaiga en igual proporción el costo de los honorarios del perito. El tribunal de instancia dispondrá un término razonable para que tales honorarios sean satisfechos a través de su Secretaría, bajo apercibimiento de desestimar o ventilar en rebeldía cualquier caso en que no se cumpliere el mandato.

■ No procede que los gastos sean prorrateados en esta etapa por las terceras demandadas, ya que surge que éstas fueron subcontratistas de la peticionaria. Al final del litigio podrá recobrar el monto que correspondiera, de resultarle alguna de dichas terceras demandadas responsable en derecho. Debe tenerse presente que su responsabilidad como construc-

tora, de mediar vicios de construcción, al amparo del Art. 1483 del Código Civil (31 L.P.R.A. sec. 4124) y nuestra doctrina jurisprudencial, es directa y primaria. *Hernández Denton* v. *Western Pines Corp.*, 103 D.P.R. 741 (1975); *González* v. *Centex Constr. Co., etc.*, 103 D.P.R. 82 (1974); *Pereira* v. *I.B.E.C.*, 95 D.P.R. 28 (1967); *Torres Reyes* v. *Tribunal Superior*, 94 D.P.R. 398 (1967).

■ De igual modo, la expresión del tribunal de instancia en el sentido de que el informe del perito judicial "será obligatorio para las partes" no puede tener el alcance de negarle a cualesquiera de éstas la oportunidad de impugnarlo. Estimamos que el concepto correcto es que el informe del perito judicial se considere altamente persuasivo, pero antes de aprobar su dictamen el tribunal o su Comisionado deberá oir y considerar objeciones, si algunas, que al informe presenten las partes, concediendo una vista oral en la que podrá presentarse prueba relevante, inclusive el interrogatorio directo del perito, para impugnar su informe. Si la cotización más baja de dicho perito no incluye su comparecencia ante el Comisionado Especial o el tribunal, es válida, realista y razonable la disposición de que los gastos que tal comparecencia impliquen sean satisfechos por la parte que así lo solicita. Ahora bien, si como consecuencia directa de esa comparecencia, el resultado favorece de manera sustancial la parte que impugna el informe, ese gasto debe ser reconocido como costas a ser satisfechas por la parte contraria. Este enfoque es congruente con la interpretación expuesta previamente en torno al inciso 3 del Art. 327 del Código de Enjuiciamiento Civil sobre la fijación de la compensación a peritos "atendidas todas las circunstancias".

■ Finalmente deseamos enfatizar que en todo litigio civil, cualquier parte tiene en sus manos un instrumento efectivo para liberarse de las costas y honorarios que el concepto de temeridad conlleva en virtud de lo dispuesto en la

Regla 35.1 de las de Procedimiento Civil vigentes. Causa extrañeza lo poco que los abogados puertorriqueños utilizan la misma. En un caso como el de autos, nada impide que una vez el informe del perito judicial sea rendido y evaluado, la peticionaria o cualquiera de las terceras demandadas, de serle adverso, se acojan a sus términos y deriven como beneficio el derecho a cobrar de la parte reclamante "las costas, gastos y honorarios de abogado incurridos con posterioridad a la oferta." Es mediante un enfoque integral y renovador de las reglas procesales que insuflamos vida al sistema de administrar justicia para beneficio a corto plazo de las partes en un litigio, y a largo plazo para futuros litigantes.

En virtud de lo expuesto, *se expedirá el auto solicitado dictándose Sentencia modificando la orden del Tribunal Superior, Sala de Bayamón, de fecha 8 de octubre de 1975 a los fines de que los honorarios del perito judicial designado sean satisfechos por partes iguales por los reclamantes y la peticionaria, y que el trámite ulterior continúe conforme los pronunciamientos aquí dispuestos.*

El Juez Asociado, Señor Martín no intervino.