# 2004 DTA 136

## TRIBUNAL DE CIRCUITO DE APELACIONES
## REGION JUDICIAL DE CAGUAS, PANEL IX

IVIS LUCIA PADILLA DONES EN REPRESENTACIÓN DE SU HIJO MENOR JOHN LOUIS RODRÍGUEZ PADILLA, Y EVELYN LÓPEZ EN REPRESENTACIÓN DE SU HIJA MENOR SILVIA MARUSKA RODRÍGUEZ LÓPEZ
Demandantes-Apelados

v.

LIDIA MÉNDEZ GONZÁLEZ, DAVID NEGRÓN DE LA CRUZ Y SU ESPOSA, RITA AMALIA CORREA GONZÁLEZ, Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS, Y BANCO SANTANDER, SUCURSAL DE CAYEY
Demandados-Apelantes los nombrados 2, 3 y 4 en el epígrafe

Núm. KLAN-03-01221

San Juan, Puerto Rico, a 30 de agosto de 2004

Panel integrado por su Presidenta, la Juez Pesante Martínez,
y los Jueces Aponte Jiménez y Salas Soler

Pesante Martínez, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La parte apelante, Lydia Méndez González, David Negrón de la Cruz y su esposa Rita Amalia Correa González y la sociedad legal de gananciales compuesta por ambos y el Banco Santander, sucursal de Cayey, nos solicitan la revisión de la sentencia enmendada emitida el 25 de agosto de 2003 por el Tribunal de Primera Instancia, Sala Superior de Caguas, (en adelante, "*TPI*"). Mediante la misma, dicho foro declaró con lugar la acción de nulidad de escritura y daños y perjuicios incoada contra los apelantes por la parte apelada, Ivis Lucía Padilla Dones, en representación de su hijo menor, John Louis Rodríguez Padilla y Evelyn López, en

representación de su hija menor, Silvia Maruska Rodríguez López. A su vez, el TPI le ordenó al Registrador de la Propiedad, Sección Primera de Caguas: (i) la anulación de cierta inscripción donde figuraban como titulares de la propiedad en controversia los aquí apelantes David Negrón de la Cruz y su esposa Rita Amalia Correa González; y (ii) la inscripción de los apelados John Louis Rodríguez Padilla y Silvia Maruska Rodríguez López como los verdaderos titulares de dicha propiedad. En su consecuencia, el TPI desestimó la reconvención de instada por Negrón de la Cruz y Correa Gónzalez y condenó a éstos, la sociedad legal de gananciales compuesta por ambos y a Méndez González a pagar de manera solidaria a los apelados la cantidad de $3,563 por concepto de arrendamiento del inmueble objeto del presente pleito, la cual, según el foro apelado, podría variar y/o aumentar hasta que la parte apelada tome posesión final del mismo.

Además, se condenó solidariamente a la parte apelante de epígrafe a pagar la cantidad de $5,000 a Rodríguez Padilla por concepto de los daños emocionales y angustias mentales. Finalmente, se desestimó la acción instada contra Banco Santander y se condenó de manera solidaria a los apelantes de epígrafe a satisfacer la cantidad de $2,000 por concepto de costas, gastos y honorarios de abogado.

Por los hechos pertinentes y el trasfondo procesal que expondremos, procede modificar la sentencia enmendada que nos ocupa a los fines de eliminar la imposición de honorarios de abogado por temeridad. Conforme a ello, se devuelve el caso al TPI para que proceda a determinar si los gastos recobrados como costas son razonables y necesarios.

## II
Las controversias planteadas en el recurso de título nos obliga a efectuar un minucioso recuento de los hechos fácticos que suscitaron las mismas, de suerte que dicho ejercicio nos asista en su justa, ponderada y debida solución.

El 21 de agosto de 1998, la parte apelada presentó ante el TPI una acción civil sobre nulidad de escritura y daños y prejuicios contra la parte apelante. Mediante dicha acción, los apelados expusieron que allá para el 11 de junio de 1996, el causahabiente Luis Meraldo Rodríguez Rodríguez, identificado también por Luis Rodríguez y por Luis M. Rodríguez, adquirió la propiedad objeto del presente litigio, ubicada en la Urbanización El Condado, número 289 del Barrio Bairoa en el Municipio de Caguas.

La propiedad fue comprada por Rodríguez Rodríguez por la cantidad de $20,000, por la cual asumió una hipoteca de $63,000 que gravaba dicho inmueble a la fecha de la compra. Los apelantes aducen que el referido precio de compraventa de $20,000 fue donado a Méndez González por Rodríguez Rodríguez, a quien identifican como *"su hijo de crianza, ... por razón de su agradecimiento por haber vivido muchos años de su vida, en su compañía, para que tuviera una residencia, ya que ésta no tenía ninguna"*. ■

Por su parte, los apelados señalan que Rodríguez Rodríguez tenía otras propiedades, por lo que hizo figurar como parte compradora a la apelante Lydia Méndez González, quien, al momento de la referida transacción, residía en el estado de Nueva York, E.E.U.U. La sucesión apelada de Rodríguez Rodríguez alega que Méndez González conocía al causahabiente desde la infancia, gozaba de su confianza y, además, sabía a conciencia que el dinero pagado como precio de compra le pertenecía a él. Sobre el particular, los apelados expresaron que Rodríguez Rodríguez efectuó los pagos subsiguientes de la hipoteca que gravaba la referida propiedad y realizó reparaciones al inmueble con tiempo de antelación a su fallecimiento, acontecido el 5 de octubre de 1997.

Rodríguez Rodríguez murió intestado, por lo que la parte apelada, Padilla Dones, solicitó mediante Declaratoria de Herederos que se declarase como sus únicos y universales herederos a sus hijos, los apelados Rodríguez Padilla y la menor de edad, Rodríguez López.

Luego del deceso de Rodríguez Rodríguez, la sucesión y parte apelada continuó pagando los plazos de la

referida hipoteca y Rodríguez Padilla, quien para aquel entonces era aún menor de edad, comenzó a habitar junto a su compañera consensual y la hija de ambos, la propiedad que alegadamente pertenecía a su padre, tras un supuesto acuerdo entre las madres apeladas. La parte apelada acotó que Méndez González nunca vivió la casa objeto del litigio, nunca satisfizo el importe de la hipoteca de la misma y nunca contribuyó al pago de la remodelación y materiales invertidos en la misma.

Más aún, de los documentos en autos se desprende que los servicios básicos de agua, luz, teléfono y demás no aparecían bajo el nombre de Méndez González, sino bajo el nombre de los apelados John Rodríguez Padilla (i.e. factura de la luz eléctrica) e Ivis Padilla (i.e. factura telefónica unidad residencial emitida por Puerto Rico Telephone Company, "*PRTC*"). Los pagos emitidos por dichos servicios, en conjunción con los pagos realizados por la compra de equipos y materiales para las remodelaciones de la casa, agravó la condición económica de la sucesión, por lo que se vieron en la obligación de descontinuar los pagos de la hipoteca relacionada para marzo de 1998, incurriendo en morosidad.

Entre los hechos alegados por los apelados mediante la acción civil instada, surge que el 13 de agosto de 1997, Méndez González, en aparente acto contrario al principio de confianza alegadamente depositado en ella por Rodríguez Rodríguez: (i) impidió que la propiedad en cuestión fuese traspasada a la sucesión del causahabiente; y (ii) comenzó a hacer tanto arreglos como contactos para vender la misma a otro, a sabiendas de que ella era únicamente testaferro del causahabiente Rodríguez Rodríguez y no la dueña de la propiedad. Aduce dicha parte que Méndez González llevó a cabo todas estas gestiones sin tomar en consideración el conocimiento habido de que la casa estaba siendo habitada por el joven Rodríguez Padilla y su familia.

En el sentido contrario, la parte apelante establece que, dada la falta de pago de la mencionada hipoteca, en agosto de 1998, Méndez González visitó las oficinas del Banco Santander en el Municipio de Cayey para obtener información de los pormenores del mismo y entrevistarse con el apelante Negrón de la Cruz, quien fungía como Gerente de Operaciones de dicha sucursal.

Añade la parte apelante que con la información provista por Méndez González, solicitó a la institución comercial Santander Mortgage el estado de cuenta de la propiedad, cuyo resultado fue advenir en conocimiento que la cuenta había sido referida a los abogados para el inicio del proceso de ejecución por tener cinco meses de atraso en los pagos del préstamo hipotecario. Los apelantes refieren que la propia Méndez González le ofreció la propiedad en venta a Negrón de la Cruz, quien había mostrado interés en la misma.

En su consecuencia, mediante Escritura Pública Número 92 de Compraventa de 13 de agosto de 1998, autorizada por el Notario Público Jorge Puig, Méndez González vendió la controvertida propiedad a Negrón de la Cruz y Correa González, su esposa, por la cantidad de $78,000. De dicha cantidad, según se desglosa en la escritura de referencia, $58,700 serían retenidos por los compradores para el pago en su día de la hipoteca que gravaba el inmueble y $20,000 serían pagaderos, mediante carta de pago, a Méndez González por parte del matrimonio Negrón-Correa.

En relación con la antedicha transacción, la cual la parte apelada describe como fraudulenta, éstos aducen que Negrón de la Cruz, una vez adquirió la propiedad, le cambió las cerraduras de las puertas, sacó y arrojó bienes muebles que se encontraban dentro de las misma, pertenecientes al joven Rodríguez Padilla; su esposa consensual, Pérez Ramos y su hija menor de edad, C.N.R.P., "*ocasionándole graves tormentos y angustias mentales que se estiman en la suma de de CIEN MIL DÓLARES ($100,000.00)*". ■ Daños similares reclamó la parte apelada Rodríguez López, quien refirió que la propiedad había obtenido una equidad ("*equity*") por la misma cantidad al momento en que se celebró la alegada compraventa del 13 de agosto de 1998.

La parte apelada instó la acción civil de referencia el 21 de agosto de 1998, la cual Negrón de la Cruz contestó el 9 de noviembre del mismo año e interpuso una reconvención. El apelante negó sustancialmente los

hechos de la demanda. Negó tener conocimiento de que la mencionada propiedad pertenecía a la sucesión apelada. Sin embargo, Negrón de la Cruz admitió haber cambiado las cerraduras de la casa, bajo la premisa de que la misma se encontraba desocupada e inhabitada. Entre las defensas afirmativas presentadas, Negrón de la Cruz reclamó la protección del tercero registral, según consagrada en el Artículo 105 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2355.

Además, el apelante catalogó la demanda de referencia como *"frívola"*, ya que la misma se interpuso con el propósito de afectar sus relaciones laborales, cuya consecuencia, dice, fue un supuesto daño en su lugar de trabajo, el Banco Santander, quien también figuró como parte demandada. Por ello, reclamó angustias y sufrimientos morales y mentales estimados en $50,000, así como daños económicos calculados en $15,000, justificados por dicha parte en que no había podido arreglar ni alquilar la propiedad en cuestión desde que la adquirió de Méndez González. En igual fecha, el Banco Santander contestó la demanda, mas no así la apelante Méndez González, quien fue emplazada por edicto mediante orden dictada por el TPI. Al no contestar la acción civil incoada, el foro de referencia le anotó la rebeldía.

Tanto el Banco Santander como el apelante Negrón de la Cruz presentaron solicitudes para disponer de las controversias de manera sumaria, las cuales fueron declaradas sin lugar por el TPI, por entender que la existencia de controversias ameritaba la celebración de vista evidenciaria para escuchar la prueba y dirimir la credibilidad.

Tras varios trámites procesales, se celebró el juicio en su fondo. Entre los testigos utilizados por la parte apelada testificó Padilla Dones, madre del joven Rodríguez Padilla, ambos apelados. Ésta abundó sobre el fundamento para declarar nulo el negocio jurídico habido entre los apelantes Negrón de la Cruz y Méndez González. Padilla Dones declaró que la abogada Ana Rodríguez vendió originalmente la residencia a Rodríguez Rodríguez. Al enterarse de que Méndez González quería vender la propiedad, se comunicó con el Notario Público Joaquín Nieves, quien autorizó la Escritura Pública Número 22 donde aparecía Méndez González como parte compradora, tal y como instruyó el causahabiente Rodríguez Rodríguez al éste comprar la litigiosa propiedad.

Además, Padilla Dones testificó que recibió varias llamadas de Negrón de la Cruz, quien le cuestionó los pormenores de la mencionada hipoteca como balance del préstamo, y más adelante le informó sobre la compra de la casa, por lo que le solicitó que se removieran de inmediato las pertenencias del hijo fuera de la misma. Por su parte, la licenciada Rodríguez atestó que el dinero que tanto su esposo como ella recibieron como parte de la transacción recogida en la Escritura Número 22 provino de Rodríguez Rodríguez, aún cuando aparecía como compradora Méndez González, según mencionado.

Entre los testigos utilizados por la parte apelante, testificó el propio Negrón de la Cruz quien negó conocer las alegaciones de los apelantes respecto a la titularidad de la propiedad y reiteró su reclamo de protección como tercero registral.

El 11 de junio de 2002, el TPI emitió un primer dictamen denominado Sentencia mediante el cual declaró con lugar la demanda instada. Sin embargo, a instancia de la parte apelante, quien adujo que dicha determinación no disponía de las controversias en su totalidad, emitió la Sentencia Enmendada que hoy nos ocupa el 25 de agosto de 2003, la cual dispuso de la totalidad de las controversias trabadas, según referido.

Insatisfechos con este curso decisorio, los apelantes acuden ante nos, señalando, en síntesis, que el TPI cometió seis errores, en gran parte girando en torno a la apreciación de la prueba desfilada y la credibilidad testimonial. Es decir, a base de lo que ellos catalogan como haber resuelto *"a base de conjeturas"*, el TPI descartó que la propiedad en controversia no era de Rodríguez Rodríguez, resolviendo lo contrario. Íntimamente ligado a ello, los apelantes aducen que el TPI erró en su decreto de nulidad de la Escritura Número

92 de Compraventa, según referida, no sin antes haberle imputado confabulación y engaño con un tercero. En cuanto a la concesión de daños a Rodríguez Padilla por la cantidad de $5,000, los apelantes caracterizan dicha acción como errada, ya que, de acuerdo a su alegación, la prueba no demostró daño alguno.

De igual manera, los apelantes señalan que el TPI no debió conceder una partida de daño especial mínima de $3,563, ya que la misma no fue alegada en la demanda por los apelados ni se desfiló prueba alguna, decisión que, de acuerdo a los apelantes, no tomó en cuenta los créditos por pagos y mejoras por ellos invertidas, perpetuando un alegado enriquecimiento injusto.

Por otra parte, los apelantes señalan como quinto error el que el TPI aprobara un Memorial de Costas, el cual consideran como prematuro y cuyo contenido tiene partidas que no pueden ser consideradas como costas por ser "*exageradas y/o irrazonables y/o innecesarias*". Como sexto y último error, los apelantes expusieron su inconformidad en cuanto a la imposición de honorarios de abogado, por parte del TPI, aun cuando no hubo un decreto al respecto en cuanto al trámite del pleito.

Con el beneficio de una exposición narrativa de la prueba, los alegatos de las partes y un apéndice conteniendo documentos medulares, estamos en condición de resolver el recurso de epígrafe.

### III

De suerte que podamos resolver los errores primero y segundo, por estar estrechamente vinculados, precisa evaluar, como cuestión de umbral, la apreciación de la prueba efectuada por el TPI y la adjudicación de credibilidad que a bien hiciera dicho foro judicial al momento de emitir el dictamen apelado. Dicho ejercicio nos ayudará a determinar si le asiste o no la razón a la parte apelada en cuanto a su reclamo de protección por ser tercero registral y en su consecuencia, revertir así la plena efectividad y vigencia de la escritura pública anulada por el TPI, de haberse cometido los errores señalados.

Como corolario a canalizar adecuadamente la controversia señalada, y en respuesta al tercer y cuarto señalamiento de error, debemos determinar si los actos u omisiones de la parte apelante ocasionaron el daño alegado y, por su culpa, están obligados a reparar el daño causado.

Además, debemos dirimir la procedencia de la concesión de daños especiales por concepto de arrendamiento del inmueble por parte de los apelantes a un tercero. Para ello, resulta imprescindible e imperativo determinar, de resolver que a la parte apelante no le cobija la protección de tercero registral, si dicha parte fue o no poseedora de mala fe. Si la determinación es que, en efecto, la parte apelante era poseedora de mala fe, ahí habremos de examinar la cuantía adecuada que le corresponde a los apelantes satisfacer por los frutos percibidos y los que el poseedor legítimo hubiere podido percibir.

En respuesta al quinto y sexto señalamiento de error, debemos auscultar la procedencia del memorial de costas y la aprobación del mismo conforme a su presentación. Finalmente, pasaremos a dirimir la corrección de la imposición de honorarios de abogado por temeridad y si la misma debe prevalecer conforme su adjudicación. Veamos.

### IV
**A.  La apreciación de la prueba y la adjudicación de credibilidad testifical.**

Es norma claramente establecida por el Tribunal Supremo de Puerto Rico que en ausencia de error manifiesto, pasión, prejuicio o parcialidad, no se intervendrá a nivel apelativo con las determinaciones de hechos y adjudicación de credibilidad hecha en instancia por el juzgador de los hechos. *Trinidad García v. Chade*, opinión de 18 de enero de 2001, **2001 J.T.S. 10**, a la pág. 793; *Colón y otros v. K-Mart y otros*, opinión de 26 de junio de 2001, **2001 J.T.S. 98**, a la pág. 1484; *Municipio de Ponce v. Autoridad de Carreteras*, opinión

de 29 de diciembre de 2000, **2001 J.T.S. 3**, a la pág. 658; *Monllor Arzola v. Soc. Legal de Gananciales*, 138 D. P.R. 600 (1995).

Más aún, dispone la Regla 43.2 de las de Procedimiento Civil de Puerto Rico, 32 L.P.R.A., Ap. III, en lo pertinente, que *"[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el Tribunal Sentenciador para juzgar la credibilidad de los testigos"*.

Un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de instancia. *Argüello v. Argüello, supra.* La determinación de credibilidad del tribunal sentenciador es merecedora de gran deferencia por parte del tribunal apelativo, por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, ya que él fue quien oyó y vio declarar a los testigos. *Id.*; *Pueblo v. Bonilla Romero*, 120 D.P.R. 92 (1987).

Más aún, el juez ante quien deponen los testigos es quien tiene la oportunidad de verlos y observar su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, en fin, el comportamiento general mientras declara, factores que van formando gradualmente en su conciencia la convicción en cuanto a si dicen la verdad. *Argüello v. Argüello, supra. "[L]a declaración de un testigo no contradicho sobre un hecho determinado, debe merecer crédito, a no ser que su versión sea físicamente imposible, inverosímil o que por su conducta en la silla testifical se haga indigno de crédito"*. *Miranda Soto v. Mena Eró*, 109 D.P.R. 473 (1980) (Citas omitidas).

Aunque, de ordinario, el foro apelativo no interviene con la apreciación de la prueba que hacen los foros judiciales de instancia, sí lo hace cuando un balance racional, justiciero y jurídico de la totalidad de la prueba y de los documentos que obran en autos lleva a conclusiones distintas a las del tribunal de instancia. *Negrón Rivera y Bonilla, Ex Parte*, 120 D.P.R. 61 (1987).

Un tribunal apelativo no puede dejar sin efecto una sentencia cuyas conclusiones encuentran apoyo en la prueba desfilada. *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172, 181 (1985); *Pérez v. Hosp. La Concepción*, 115 D.P.R. 721, 728 (1984). No obstante, está claro que el arbitrio del juzgador de hechos es respetable, mas no absoluto. Por eso, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal apelativo. Véase, *Rivera Pérez v. Cruz Corchado*, 119 D.P.R. 8 (1987).

Con relación a la contención esbozada por la parte apelante, a saber, que el TPI resolvió la verdadera titularidad de la propiedad a base de conjeturas, ignorando su reclamo de tercería registral y haciendo caso omiso a la prueba que, según dicha parte, tiende a demostrar la legitimidad del negocio jurídico impugnado, entendemos categóricamente que no le asiste la razón. Veamos.

## B. El Principio de Fe Pública Registral y el Tercero Registral

El principio de fe pública registral determina uno de los efectos básicos del sistema inmobiliario registral y en consecuencia constituye la razón del mismo. Esta es, proteger las adquisiciones que por negocio jurídico efectúen los terceros adquirentes que confían en las constancias del Registro. En provecho de estos terceros adquirentes de buena fe, la ley reputa exacto el contenido del Registro, aunque los términos de sus asientos no concuerden con la realidad jurídica extrarregistral.

El Artículo 105 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2355, establece la protección de derechos de terceros. A tales efectos, dispone que:

*"A pesar de que la inscripción no convalida los actos o contratos que sean nulos con arreglo a las leyes, ni altera las relaciones jurídicas de quienes intervengan como partes en dichos actos o contratos, el tercero que de buena fe y a título oneroso adquiera válidamente algún derecho de persona que en el Registro aparezca con facultad para transmitirlo, será mantenido en su adquisición, una vez haya inscrito su derecho, cuando por cualquier razón resulte inexacto el Registro, bien sea que se rescinda, resuelva o anule el título del otorgante en virtud de causas que no resulten clara y expresamente del propio Registro, o que existan sobre la finca acciones o títulos de dominio o de otros derechos reales que no estén debidamente inscritos.*

*Al respecto, ha de entenderse por Registro los asientos relativos a una finca o derecho, no extinguidos según lo dispuesto en la sec. 2451 de este título, que se refieran a cargas y gravámenes o a derechos que no sean el que transfiere o grava, además del asiento que publica el derecho del trasmitente.*

*La buena fe del tercero se presume siempre mientras no se prueba que al adquirir conocía la falta de exactitud del Registro.*

*El adquirente a título gratuito sólo gozará de la protección registral que corresponde a sus causantes o transferentes.*

*En ningún caso afectarán a tercero los derechos meramente mencionados o la indebida constancia de obligaciones."*

El Tribunal Supremo interpretó este artículo en *Banco de Santander v. Rosario Cirino*, 126 D.P.R. 591, 603-604 (1990), y acuñó los requisitos del tercero registral en la máxima siguiente: *"deberá ser un tercero civil que de buena fe y a título oneroso, en un negocio intervivos válido, adquiera un derecho real inmobiliario inscrito de persona que en el Registro de la Propiedad aparezca con facultades para transmitirle, en función de un registro inexacto, sin que consten clara y expresamente las causas de la inexactitud ni concurra alguna de las excepciones a la aplicación de la fe pública registral y que, a su vez, haya inscrito su adquisición".*

Respecto al requisito de buena fe, nuestro más alto foro ha indicado que la buena fe requerida es de tipo subjetiva, sicológica e **intelectiva; que es el desconocimiento por parte del tercer adquirente de la inexactitud del Registro; que requiere un elemento de diligencia; y que esa buena fe se requiere en el momento en que queda concluso el negocio jurídico de adquisición por el tercero.** *Banco de Santander v. Rosario Cirino, supra*, páginas 606-607.

En torno a la buena fe requerida por la persona que recurre a la protección de la publicidad registral, el Tribunal Supremo ha expresado que si bien nuestro derecho requiere cierto grado de diligencia, no podemos exigirle a quien confía en la fe pública registral, que posea un grado de conocimiento técnico-jurídico que le permita pasar juicio sobre la corrección de la calificación que de los documentos presentados para la inscripción haya hecho el Registrador de la Propiedad. *Consejo Tit. C. Parkside v. MGIC Fin. Corp.*, 128 D.P.R. 538, 559 (1991).

Con relación al requisito de inexactitud del Registro de la Propiedad, el Art. 110 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2360, lo define como *"todo desacuerdo que en orden a los derechos inscribibles exista entre aquél y la realidad jurídica extrarregistral".* Entre las inexactitudes que señala dicho artículo están: (1) la proveniente de no haber tenido acceso al Registro alguna relación jurídica inmobiliaria; (2) la que debe su origen a la extinción de algún derecho inscrito o anotado; (3) la que tiene lugar cuando hay algún defecto o error de algún asiento; y **(4) la proveniente de la falsedad, nulidad o defecto del título que hubiere motivado el asiento y de cualquier otra causa no especificada anteriormente.**

El Tribunal Supremo ha interpretado que se requiere que el tercero adquiera en función de un registro

inexacto y ha señalado que *"el Registro es inexacto cuando está en desacuerdo con la realidad jurídica extraregistral en cuanto a los derechos inscribibles"*. *Banco de Santander v. Rosario Cirino*, a la página 608. Además, se requiere que en el Registro de la Propiedad no consten clara y expresamente las causas de la inexactitud registral, refiriéndose a los asientos relativos a la finca que no estuvieran extinguidos. *Id.*, a la pág. 609.

En el caso de marras, la defensa del tercero registral no fue creída por el TPI, dada la apreciación de la prueba y la adjudicación de credibilidad que acertadamente hiciera dicho foro al testimonio vertido por los testigos de la parte apelada.

En su escrito, la parte apelante señala que, al momento de visitar la propiedad en cuestión, no se percató de que en la misma viviese persona alguna. Acto seguido, consultó al licenciado Jorge Puig, Notario Público quien autorizó el acto de otorgamiento de la anulada Escritura Pública Número 92, quien ordenó un estudio de título. La prueba presentada ante el TPI era que allí sí vivía el joven apelado, Rodríguez Padilla con su esposa e hija, quien días antes había hablado con Negrón de la Cruz sobre la titularidad del inmueble, que efectuaron los pagos de la mencionada hipoteca al fallecer Rodríguez Rodríguez y que pagaron los servicios básicos de luz, agua y teléfono entre otros. Tanto declaraciones juradas de los demandantes como prueba documental (i.e. copias de cheques pagaderos a Santander Mortgage) y prueba testifical vertida durante los días de la celebración del juicio en su fondo, según referido, merecieron entero crédito por parte del TPI, apreciación que esta Curia avala.

Además, cabe resaltar que la fecha de dicho estudio de título es de 1ro de octubre de 1998 y la escritura impugnada se otorgó el 13 de agosto de 1998; esto es, **con posterioridad a su otorgamiento.** Llama la atención que Negrón de la Cruz, quien tiene 36 años de experiencia en la industria bancaria, según sus propias declaraciones, pretendiera compeler el ánimo del juzgador a favor de que creyesen que desconocía el verdadero titular registral de la propiedad que adquiriese mediante la escritura hoy nula. El desfase en gestiones de trascendental importancia al momento de adquirir una propiedad inmueble como lo es asegurarse que de quien compra tiene la potestad legal de transferir su título mediante un estudio al respecto, levanta serias dudas sobre la credibilidad que pudo haber recibido su testimonio.

Ante dicho cuadro fáctico, a Negrón de la Cruz, pues, sí le podemos exigir, no sólo diligencia mínima requerida, sino el grado de conocimiento que debe poseer en los consabidos 36 años de experiencia en la industria bancaria que debieron permitirle pasar juicio sobre la corrección de la calificación que de los documentos presentados para la inscripción haya hecho el Registrador de la Propiedad. *Consejo Tit. C. Parkside v. MGIC Fin. Corp., supra.*

Concluimos que en la parte aquí apelante no concurren los elementos de buena fe, de adquisición de un derecho inmobiliario registral inscrito y que le fue trasmitido por una persona que en el Registro aparecía con facultades para llevar a cabo tal transmisión. De igual forma debemos señalar que el caso que hoy nos ocupa, al igual que *Banco de Santander v. Rosario Cirino, supra,* concurren las circunstancias particulares que fueron medulares para la disposición final de aquél como lo son que Negrón de la Cruz: (a) conocía que al momento del otorgamiento de la escritura de hipoteca el deudor no era el titular registral de la propiedad inmueble objeto de dicho negocio jurídico; y (b) además no desplegó la diligencia requerida para lograr ser catalogado como un tercero de buena fe.

No podemos dejar sin efecto aquellas determinaciones cuyas conclusiones encuentran apoyo en la prueba desfilada. *Sánchez Rodríguez v. López Jiménez, supra; Pérez v. Hosp. La Concepción, supra.* La parte apelante no goza de la protección que a los terceros registrales ofrece el principio de la fe pública registral. El primer y segundo error señalados no fueron cometidos.

Resuelta la cuestión de umbral, a saber, la apreciación de la prueba desfilada y la adjudicación de credibilidad efectuada por el TPI, nos corresponde determinar si los actos u omisiones de la parte apelante ocasionaron el daño alegado y, por su culpa, están obligados a reparar el daño causado. Además, es menester dirimir si la concesión de daños especiales por concepto de arrendamiento del inmueble por parte de los apelantes a un tercero procede o no, según adjudicada.

## C. Obligaciones cuando se causa daño por culpa o negligencia y la valorización del daño

La responsabilidad civil, derivada de actos u omisiones culposas o negligentes, se rige por el Artículo 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141. Para que exista esa responsabilidad, es necesario que ocurra un daño, una acción u omisión negligente y la correspondiente relación causal entre el daño y la conducta culposa o negligente. *Mun. de San Juan v. Bosque Real, Inc.,* opinión de 4 de marzo de 2003, 158 D.P. R. ___(2003), **2003 J.T.S. 33**, a la pág. 636; *Valle v. E.L.A.,* opinión de 14 de mayo de 2002, 157 D.P.R. ___ (2002), **2002 J.T.S. 70**; *Blás v. Hosp. Guadalupe,* 146 D.P.R. 267, 322 (1998); *Montalvo v. Cruz,* 144 D.P.R. 748, 755 (1998); *Miranda v. E.L.A.,* 137 D.P.R. 700, 706 (1994). No basta que concurran un daño y una acción u omisión negligente. Para generar responsabilidad, es imperativo que exista un nexo causal entre el daño y el acto culposo o negligente. *Tormos Arroyo v. D.I.P.,* 140 D.P.R. 265 (1996).

En el caso de las omisiones, la ocurrencia de éstas sólo da lugar a una causa de acción, en los casos en que exista un deber de actuar. Para que ocurra un acto negligente como resultado de una omisión, tiene que existir un deber de cuidado impuesto o reconocido por ley, y que ocurra el quebrantamiento de ese deber. *Elba A.B.M. v. U. P.R.,* 125 D.P.R. 294, 308 (1990). Los elementos que han de considerarse en la determinación de si una omisión genera responsabilidad son: (1) la existencia o inexistencia de un deber jurídico de actuar por parte del alegado causante del daño, el incumplimiento del cual constituye la antijuridicidad, y (2) si de haberse realizado el acto omitido, se hubiera evitado el daño. *Tormos Arroyo v. D.I.P., supra.* La imposición de responsabilidad descansa en el deber de las personas de subordinar sus acciones a las reglas de la prudencia, de manera que si actúan de forma contraria a éstas, surge su obligación de indemnizar al perjudicado. Carlos J. Irizarry Yunqué, *Responsabilidad Civil Extracontractual,* 5ta ed., 2003, a la pág. 56. De lo anterior se colige un deber general de diligencia cuyo empleo pudo evitar el resultado dañoso. *Jiménez v. Pelegrina Espinet,* 112 D.P.R. 700, 704 (1982).

El deber de cuidado incluye tanto la obligación de anticipar como la de evitar la ocurrencia de daños cuya probabilidad es razonablemente previsible. *Elba A.B.M. v. U.P.R., supra.* El concepto de previsibilidad es la base que sostiene el principio de responsabilidad extracontractual. *Rivera Pérez v. Cruz Corchado,* 119 D.P.R. 8 (1987). Pero la regla de anticipar el riesgo no se limita a que el riesgo preciso o las consecuencias exactas arrastradas debieron ser previstas. Lo esencial es que se tenga el deber de prever en forma general, consecuencias de determinada clase. La responsabilidad no depende de si en el ejercicio de razonable diligencia, el demandado previó o debió prever, el daño específico reclamado, pero la parte acusada de negligencia puede ser responsable de cualquier cosa que después de completado el daño, aparezca ser una consecuencia natural y probable de su acto u omisión. *Tormos Arroyo v. DIP, supra.*

El deber de previsión no se extiende a todo peligro imaginable que concebiblemente pueda amenazar la seguridad, sino a aquél que llevaría a una persona prudente a anticiparlo. *Elba A.B.M. v. U.P.R., supra.* No puede ser de otro modo, dado que lo contrario implicaría que una persona estaría obligada a prever todos los posibles riesgos que podrían concebiblemente estar presentes en múltiples situaciones, imponiéndole así una responsabilidad absoluta. *Colón y otros v. K-Mart y otros, supra.* En otras palabras, si el daño es previsible, habrá responsabilidad. *Jiménez v. Pelegrina Espinet, supra.*

De otra parte, para que pueda imponerse responsabilidad por el daño ocasionado, es necesario que exista una relación causal entre le daño y la acción u omisión negligente. En esta determinación nos hemos regido por

la teoría de causalidad adecuada, que postula que *"[n]o es causa toda condición sin la cual no hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general"*. *Soc. de Gananciales v. Jerónimo Corp.*, 103 D.P.R. 127, 134 (1974). Conforme a ello, un acto podrá ser considerado como el resultado probable y natural de un acto u omisión negligente, si luego del suceso, mirándolo retroactivamente, el daño parece ser la consecuencia razonable y común de la acción u omisión. *Montalvo v. Cruz, supra,* a las págs. 756-757.

Luego de hacer la determinación de que efectivamente se sufrió daños, procede hacer la clasificación correspondiente de los daños y apreciar el valor de los mismos.

En *García Pagán v. Shiley Caribbean*, 122 D.P.R. 193 (1988), se consignó lo siguiente:

*"En la esfera local, nuestra jurisprudencia no distingue entre daños físicos, materiales o morales para efectos de resarcimiento... **Daño es todo aquel menoscabo material o moral que sufre una persona, ya en sus bienes vitales naturales, ya en su propiedad o en su patrimonio, causado en contravención a una norma jurídica, y por el cual ha de responder otra.** ...La responsabilidad civil es precisamente el deber de resarcir al damnificado, otorgándole un valor económico al daño sufrido... El resarcimiento o indemnización pecuniaria consiste en atribuir al perjudicado la cantidad de dinero suficiente para compensar su interés perjudicado. Es como una subrogación real en que el dinero ocupará el lugar de los daños y perjuicios sufridos. Es una atribución pecuniaria que crea una situación patrimonial que equivale a la destruida por el daño causado."* (Énfasis del Tribunal).

Véase además, Carlos J. Irizarry Yunqué, *Responsabilidad Civil Extracontractual, ob. cit., supra.*

La reparación puede efectuarse de dos maneras: (1) la reparación natural o *in natura*, y (2) la indemnización en dinero. Lo ideal sería la reparación natural, pero resulta muy difícil y muchas veces imposible en la práctica. *Id.* Los daños se clasifican en generales y especiales. Son daños generales aquéllos para cuya evaluación hay que recurrir a la sana discreción del tribunal. Ejemplo de ello son las lesiones físicas, el dolor, las incapacidades como resultado de dichas lesiones, las angustias mentales, el daño a la reputación y demás. Estos dos últimos también se les clasifica como daños morales. *Id.*

Los daños especiales son aquéllos que son naturales, pero no necesariamente consecuencia de la conducta del demandado, y usualmente se derivan de las circunstancias particulares del caso. Wright & Miller, 5 *Federal Practice and Procedure*, págs. 442-443. Éstos pueden probarse a base de cantidades más o menos exactas. Carlos J. Irizarry Yunqué, *Responsabilidad Civil Extracontractual, ob. cit., supra.* Ejemplo de ello lo es el lucro cesante o ingresos dejados de percibir. Dispone la Regla 7.4 de las de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. II, que cuando se reclamen daños especiales, debe detallarse el concepto de las distintas partidas. *Blas v. Hosp. Guadalupe,* 146 D.P.R. 267 (1998), citando a *Prado v. Quiñones,* 78 D.P.R. 322 (1955); *Betances v. Autoridad de Transporte,* 73 D.P.R. 223 (1952); *Tuya v. White Star Bus Line, Inc.,* 59 D.P.R. 790 (1942). De lo anterior se puede colegir como necesario que se desfile prueba de los daños sufridos ante el juzgador, de manera que éste pueda aquilatar su valor y determinar la procedencia de la reclamación.

En cuanto a la especificidad requerida al momento de alegar los daños especiales, y a modo de establecer la suficiencia de dicha alegación, en *Betances v. Autoridad de Transporte, supra*, el Tribunal Supremo entendió que una alegación de que, *"'se ha visto obligada a recluirse en cama"*, a recibir asistencia médica; *ha tenido que paralizar por completo sus labores*, ha sufrido intensos dolores físicos y angustias mentales; *y quedará incapacitada para toda clase de trabajo ..."*, (bastardillas en el original), constituía una alegación suficiente para que se le compensaran los daños especiales. Aun cuando la Regla 7.4 de las de Procedimiento Civil, *supra,* requiere cierto grado de especificidad al momento de alegar daños especiales, eso no implica que las alegaciones como las detalladas en *Betances* no puedan considerarse como suficientes. *Blas v. Hosp.*

*Guadalupe, supra,* citando a *Betances v. Autoridad de Transporte, supra.*

Cónsono con ello, en cuanto a la estimación y valoración de los daños, se ha resuelto que es una gestión o tarea difícil, ello debido al cierto grado de especulación en la determinación de éstos y por incluir a su vez elementos subjetivos tales como la discreción y el sentido de justicia y conciencia del juzgador de los hechos. *S. L.G. v. Nationwide Ins. Co.,* opinión de 18 de abril de 2002, 156 D.P.R. __ (2002), **2002 J.T.S. 61**. Ante ello, se ha puntualizado que no existe una tabla o parámetro que recoja los elementos que midan el dolor físico o mental humano y permita obtener un resultado final adecuado, a la luz de los preceptos esbozados en el Art. 1802. *Urrutia v. AAA.,* 103 D.P.R. 643, 647 (1975).

Dado que el foro de instancia es quien ha estado en contacto directo con la prueba, en especial la prueba testifical, los tribunales apelativos deberán abstenerse de intervenir respecto a las cantidades concedidas a menos que éstas sean ridículamente bajas o exageradamente altas, ello, fundado en criterios de estabilidad y de respeto a los tribunales de primera instancia. *S.L.G. v. Nationwide Ins. Co., supra; Urrutia v. AAA., supra.* Por lo tanto, la cuantificación justa y razonable para compensar los daños queda en el juicio, experiencia y discreción del juzgador. *S.L.G. v. Nationwide Ins. Co., supra.* (Citas omitidas).

No obstante lo anterior, advertidas y sometidas ante la consideración del foro apelativo factores y hechos que ameritan una modificación de cuantía, se debe proceder a ello, siguiendo los criterios antes mencionados. *S. L.G. v. Nationwide Ins. Co., supra,* citando a *Urrutia v. A.A.A., supra,* a la pág. 648. De lo contrario, reiteramos la norma de no intervenir con la apreciación de la prueba que hizo el TPI en ausencia de pasión, prejuicio, error manifiesto o parcialidad. *Trinidad García v. Chade, supra; Colón y otros v. K-Mart y otros, supra; Municipio de Ponce v. Autoridad de Carreteras, supra; Monllor Arzola v. Soc. Legal de Gananciales, supra.*

La parte apelante arguye que desconocían que el joven Rodríguez Padilla residiese en la propiedad objeto de litigio al momento de adquirir la propiedad, cambiarle las cerraduras, sacarle las pertenencias tanto del joven como de su familia y arrojarlas a la calle. Por ello, entiende que erró el TPI al conceder una partida de $5,000 al apelado Rodríguez Padilla arguyendo que la prueba demostró que no sufrió ningún daño ni que el joven residía en la propiedad en cuestión. No les asiste la razón.

Si bien es cierto que al momento de los referidos hechos el joven no se encontraba físicamente en la propiedad, también es cierto que del testimonio bajo juramento de los apelados se desprende que, durante los sucesos descritos, Negrón de la Cruz debió haber sabido que Rodríguez Padilla aún residía en el hogar. Esto es así, ya que la prueba vertida demostró que Negrón de la Cruz se comunicó con el joven vía telefónica a la mencionada propiedad días antes de la anulada compraventa, factor que demuestra que el joven residía en la misma, hecho que a bien le hizo saber Rodríguez Padilla a la parte apelante en dicha ocasión. No obstante, y a sabiendas de dicha información, procedieron con la anulada compraventa y con el desahucio extrajudicial del joven y su familia.

La falta del debido cuidado desplegado por los apelantes, es decir, el no anticipar y prever las consecuencias racionales y naturales de sus actos, ocasionaron que el joven sufriera daños y angustias mentales al ver sus pertenencias arrojadas en la calle y al carecer, debido a dichos actos, de un hogar seguro para vivir junto a su familia. No se cometió el tercer error imputado.

En cuanto al cuarto error, a saber, que erró el TPI al conceder una partida de daño especial mínima de $3,563 que no fue alegada en la demanda enmendada, sobre la que tampoco desfiló prueba alguna y fue adjudicada sin tomar en cuenta los créditos por pagos y mejoras invertidas por los apelantes, resulta menester resolver en primera instancia lo siguiente. Habiendo colegido que a la parte apelante no le cobija la consideración de tercería registral por no cumplir con el requisito, entre otros, de la buena fe, resulta menester dirimir si la parte apelante era poseedora de mala fe. Una vez dicho ejercicio concluya, estaremos en posición

de establecer su consecuente obligación, si alguna, de satisfacer daños especiales, según discutidos, y la cuantía adecuada a ser abonada.

## D. La posesión de buena fe o mala fe y obligación del poseedor de mala fe de abonar frutos dejados de percibir

Sabido es que el requisito de la buena fe es una exigencia general del derecho que permea todo el ordenamiento jurídico. *Consejo de Titulares del Condominio Parkside v. Villa Edamorga, Inc., Co., et al.,* opinión de 19 de mayo de 2004, 161 D.P.R.__ (2004), **2004 J.T.S. 80**; *Velilla v. Pueblo Supermarkets, Inc.,* 111 D.P.R. 585 (1981).

El Art. 363 del Código Civil, 31 L.P.R.A. sec. 1424, *supra*, dispone que *"[s]e reputa poseedor de buena fe al que ignora que en su título o modo de adquirir exista vicio que lo invalide. Se reputa poseedor de mala fe al que se halla en el caso contrario".* 31 L.P.R.A. sec. 1424. Nos dice el Código Civil, *supra*, que *"[l]a buena fe se presume siempre, y al que afirma la mala fe de un poseedor, corresponde la prueba".* 31 L.P.R.A. sec. 1425. Dice el Tribunal Supremo que aquel que alegue la posesión de mala fe, tiene la responsabilidad de destruir la referida presunción con suficiente prueba. Por ser una cuestión de hecho, es al tribunal a quien le corresponde declarar en última instancia si en realidad existe la mala fe. *Consejo de Titulares del Condominio Parkside v. Villa Edamorga, Inc., Co., et al., supra.*

De acuerdo a dicho Art. 363, *supra*, por lo tanto, es indispensable para la buena fe: (1) un título o modo de adquirir; (2) la existencia de vicios en dicho título o modo; y (3) **ignorancia de esos vicios por el poseedor y, por lo tanto, creencia *"fundada"* de que le pertenece el derecho o cosa que posee.** Manresa, *Comentarios al Código Civil Español*, Madrid, Reus, S.A., 1972, Tomo IV, a la pág. 113; *Cedó v. Laboy*, 79 D.P.R. 788 (1956).

En el caso de autos, resulta indubitado que los apelantes satisfacen los primeros dos elementos de la buena fe; esto es, adquirió la propiedad de Méndez González quien aparecía en la escritura anulada como la *"Vendedora"*. Dicho título estaba viciado, pues Méndez González nunca advino titular de la propiedad en cuestión por ésta sólo haber fungido como testaferro del causahabiente, a sabiendas de haber participado en una especie de donación simulada en aquel entonces, y con el conocimiento que dicha propiedad nunca salió del caudal de su *"hijo de crianza"*, según refiere la parte, al momento de efectuarse el anulado acto.

En su consecuencia, la titularidad de dicha propiedad, conforme lo resuelto por el TPI, corresponde a la sucesión de Rodríguez Rodríguez, a tenor con la Resolución del TPI, Sala de Fajardo, que declaró a la sucesión apelada heredera universal del causahabiente. Por su parte, aduce la parte apelada que los apelantes tenían conocimiento del vicio en el título, dado el acceso que la parte apelante tuvo a los documentos bancarios y la información relacionada con el préstamo hipotecario que grava la propiedad aludida, y las múltiples llamadas telefónicas en conjunto con los acercamientos provocados por Negrón de la Cruz efectuados **con anterioridad** a la adquisición de la misma.

Al interpretar el citado Art. 363 del Código Civil, *supra*, se ha dictado que la posesión de buena fe exige el desconocimiento del vicio en el título. *Consejo de Titulares del Condominio Parkside v. Villa Edamorga, Inc., Co., et al., supra.*

En esa misma línea, nos dice el Tribunal Supremo lo siguiente:

*"Este desconocimiento debe estar fundamentado en una ignorancia de tipo sicológico que, a su vez, se ajuste al principio general de que todas las personas deben obrar sin ocasionar daños a otras. Además, esa ignorancia no puede estar fundamentada en un error inexcusable."*

*Consejo de Titulares del Condominio Parkside v. Villa Edamorga, Inc., Co., et al., supra.* (Énfasis en el original)

En el caso de marras, la inconsistencia en el testimonio de la parte apelante en cuanto a su desconocimiento de que la casa estuviera deshabitada al momento de sacar las pertenencias, por un lado, queda refutado con las llamadas telefónicas, la investigación y el conocimiento que la industria bancaria debió imperar a la hora de efectuar el fallido negocio jurídico. Y si ello no fuese suficiente, resulta improcedente ignorar el hecho probado que Méndez González conocía la encomienda de testaferro del causahabiente en su persona depositada, sus límites y que la propiedad en cuestión le pertenecía a la sucesión apelada al momento de evitar el debido traspaso por efectuar la viciada compraventa.

De lo anterior se concluye que los apelantes tenían conocimiento de la verdadera titularidad de la propiedad en cuestión y que se adquirió la misma de quien no era dueño fuera de las constancias del Registro de la Propiedad. A tenor de las normas antes esbozadas sobre la posesión resolvemos que la parte apelante, Negrón de la Cruz y Méndez González son poseedores de mala fe.

Luego de examinar que la parte apelante es poseedora de mala fe, nos corresponde auscultar si corresponde la adjudicación de daños especiales y, de contestar en la afirmativa, si la partida de $3,563 a restituir por concepto de frutos dejados de percibir tras el arrendamiento de la propiedad, según dictada por el foro apelado, corresponde a la adecuada.

De la alegación específica en controversia, surge que la parte apelada no estaba haciendo una reclamación por daños generales por los daños sufridos, sino que Rodríguez Padilla se vio hasta forzado a dejar su trabajo, separarse temporalmente de su compañera conyugal por las desavenencias surgidas a raíz de las angustias sufridas y hasta verse imposibilitados en pagar a tiempo el préstamo hipotecario de referencia por los problemas económicos acaecidos a raíz del daño ocasionado.

De la prueba evaluada no surge que Méndez González haya emitido pago alguno por concepto de dicho préstamo o de las reparaciones efectuadas a la propiedad. Más aún, Negrón de la Cruz arrendó la propiedad a un tercero y se benefició de los cánones de arrendamiento devengados, dejando a la sucesión sin percibir dicho fruto.

Sin embargo, los apelantes, bajo el fundamento de enriquecimiento injusto, plantean que el TPI no tomó en consideración supuestos pagos efectuados por dicha parte por concepto de balance del préstamo hipotecario, contribuciones sobre la propiedad, pagos de seguros y mejoras realizadas a la propiedad. En su recurso de apelación, la propia parte solicita que, de confirmarse la determinación del TPI, el caso debe devolverse ante la consideración de dicho foro para determinar los créditos debidos por ellos. A su vez, advierten que los referidos pagos fueron los que alegadamente evitaron que la propiedad fuera ejecutada. Añade la parte apelante que pagaron la cantidad de $20,000 a Méndez González, $2,782.67 de atrasos a Santander Mortgage y $800.00 al licenciado Jorge Puig por concepto de cierre relacionado con el otorgamiento de la anulada Escritura Pública Número 92.

El consecuente resultado de ser considerado como poseedor de mala fe, de acuerdo a los requisitos del Art. 363 del Código Civil, *supra,* es la obligación de restituir los frutos dejados de percibir que impone el Art. 384 del Código Civil, *supra.*

Dicho artículo dispone que el poseedor de mala fe deberá abonar *"los frutos percibidos y los que el poseedor legítimo hubiere podido percibir"*, y **sólo tendrá derecho a ser indemnizado por los gastos necesarios realizados con el propósito de conservar la propiedad o el bien en cuestión**. Véase, *Consejo de Titulares del Condominio Parkside v. Villa Edamorga, Inc., Co., et al., supra.* Dicha disposición, cuyo carácter

ha sido descrito como una especie de penalidad civil, tiene un propósito punitivo, dirigido a castigar la mala fe del poseedor por haber impedido al dueño de la propiedad el goce y disfrute de la misma. *Id,* citando a *Capó v. Hartman & Cía.,* 57 D.P.R. 196, 205 (1939). El alcance de dichos frutos sólo se extiende a los frutos que el poseedor legítimo hubiere percibido si el bien o la cosa hubiere estado en su poder. *Consejo de Titulares del Condominio Parkside v. Villa Edamorga, Inc., Co., et al., supra.*

En cuanto a este último punto, la determinación de los frutos que el legítimo poseedor hubiese podido percibir puede ser una determinación compleja, cuya determinación debe ser objeto de prueba. *Id,* citando a *Costas Llinas & Co., S. en C.,* 66 D.P.R. 730, 750 (1946).

La parte apelada alega que, una vez la parte apelante adquirió la propiedad en cuestión, la alquiló a un tercero y obtuvo beneficio económico de los cánones de arrendamiento devengados mediante dicho acto, *ergo,* los frutos generados por el bien que ellos pudieron haber percibido de haber estado en posesión del mismo. Por su parte, según referido, los apelantes arguyen que tienen derecho a ciertos créditos por concepto de pagos y gastos hechos a favor del bien.

En vista de ello, somos del criterio que el TPI actuó correctamente al concederle unas partidas a la parte apelada por concepto de daños especiales, ya que las mismas fueron alegadas, *Blas v. Hosp. Guadalupe, supra,* y como poseedores de mala fe, tienen la obligación de restituir los frutos dejados de percibir. 31 L.P.R.A. sec. 1470.

### E. Las costas, gastos y los honorarios de abogado

Los errores quinto y sexto, según señalados, los discutiremos en conjunto por estar estrechamente vinculados.

Los apelantes impugnan la determinación del TPI aprobando el memorando de costas el cual alegan contiene una gran cantidad de partidas que no pueden considerarse como costas *"por ser exageradas y/o irrazonables y/o innecesarios".*

En específico, los apelantes objetan la partida de $200 por el estudio de título realizado el 28 de agosto de 1998, ya que consideran no es un gasto necesario incurrido con motivo del pleito y lo catalogan de extravagante. Además, objetan el cargo del impuesto forense de $1.00 requerido por ley al abogado ya que arguyen es un deber personal de la parte apelada. Finalmente, objetan otra serie de partidas por razón de ser innecesarias, excesivas y por no haber sido sometidas en evidencia durante el juicio.

En cuanto a la imposición de honorarios de abogado, los apelantes estiman que no debe de proceder, ya que no existe un decreto de temeridad en el trámite del litigio.

En lo que aquí respecta, la Regla 44.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.1, dispone, lo siguiente en relación con las costas:

*"(a) Su concesión. Las costas le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación, excepto en aquellos casos en que se dispusiera lo contrario por ley o por estas reglas. Las costas que podrá conceder el tribunal son los gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que un litigante debe reembolsar a otro."*

El propósito conocido de dicha regla *"es resarcir a la parte victoriosa en un litigio los gastos necesarios y razonables en que tuvo que incurrir con motivo del mismo." Rodríguez Cancel v. A.E.E.,* 116 D.P.R. 443

(1985); *Ferrer Delgado v. Tribunal Superior*, 101 D.P.R. 516, 517 (1973); *Garriga, Jr. v. Tribunal Superior,* 88 D.P.R. 245 (1963).

Históricamente, la imposición de costas a la parte perdidosa ha tenido dos (2) razones fundamentales. La primera es la de restituir al que fue obligado a litigar lo que perdió por hacer valer su derecho. El derecho de esta parte *"no debe quedar menguado por los gastos en que tuvo que incurrir sin su culpa y por culpa del adversario". Garriga, Jr. v. Tribunal Superior, supra,* a la pág. 253. La otra razón es penalizar la litigación inmeritoria, temeraria, o viciosa, y la que se lleva a cabo con el propósito de retrasar la justicia, con el fin de que tal penalidad tenga un efecto disuasivo sobre esa litigación innecesaria y costosa. *Id.*

El Tribunal goza de amplia discreción para determinar cuáles son los gastos necesarios que el litigante perdidoso debe pagar como costas. *Auto Servi, Inc. v. E.L.A.*, 142 D.P.R. 321 (1997).

Ahora bien, el derecho a recobrar costas no resulta automático. En particular, la Regla 44.1(a) establece que *"[l]as costas que podrá conceder el tribunal son los gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que un litigante debe reembolsar a otro".*

Una parte, de este modo, no viene obligada a reembolsar como costas un gasto innecesario, superfluo o extravagante. *Arrieta v. Chinea Vda. de Arrieta*, 139 D.P.R. 525 (1995); *J.T.P. Dev. Corp. v. Majestic Realty Corp.*, 130 D.P.R. 456, 466 (1992); *Toppel v. Toppel*, 114 D.P.R. 16, 22 (1983), *Meléndez v. Levitt & Sons of P. R.*, 104 D.P.R. 797, 811 (1976), *Garriga, Jr. v. Tribunal Superior, supra,* a la pág. 257.

La concesión de honorarios de abogados, por su parte, está predicada en la determinación de que una parte ha procedido con temeridad. 32 L.P.R.A. Ap. III, R. 44.2.

El Tribunal Supremo de Puerto Rico ha aclarado que la acción que amerita la imposición de este tipo de condena es aquélla que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o que produzca la necesidad de que otra parte incurra en gestiones evitables. Su propósito es establecer una penalidad al litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamento, obliga a la otra parte, innecesariamente, a asumir molestias, gastos, trabajos e inconvenientes de un pleito. *Domínguez v. Great American Life Ins. Co.,* opinión de 12 de julio de 2002, 157 D.P.R.__ (2002), **2002 J.T.S. 110**; *Rivera v. Tiendas Pitusa, Inc.*, 148 D.P.R. 695 (1999); *Blás v. Hosp. Guadalupe, supra*; *Fernández v. San Juan Cement Co., Inc.*, 118 D.P.R. 713, 718-719 (1987).

El Tribunal Supremo ha aclarado que el TPI goza de amplia discreción en este tipo de determinaciones, por lo que los tribunales apelativos sólo intervendrán en casos donde el primero hubiera abusado de su facultad. Véanse, *Ramos Báez v. Bossolo López*, 143 D.P.R. 567, 571-572 (1997); *Cotto Morales v. Ríos*, 140 D.P.R. 604, 626 (1996); *Miranda v. E.L.A.*, 137 D.P.R. 700, 719 (1994).

No obstante lo anterior, no existe temeridad cuando existe una discrepancia honesta en torno al derecho aplicable o cuando se trata de una cuestión novel, no resuelta en nuestra jurisprudencia. *Soc. de Gananciales v. Royal Bank de P.R.*, 145 D.P.R. 178 (1998); *Rivera v. A & C Development Corp.*, 144 D.P.R. 450, 460 (1997).

En el caso de autos, la cantidad total por concepto de costas concedidas por el TPI debe ser reevaluada. En cuanto a las costas aprobadas, las mismas deben ser analizadas detenidamente con el propósito de determinar la necesidad de los gastos alegados por la parte apelada y la razonabilidad de los mismos, con especial énfasis en los gastos de pasajes correspondientes a las partidas 15, 16, 17, 18, 19 y 20 del memorando de costas. Así también los gastos de la carta enviada por correo certificado a la Sra. Evelyn López y la cantidad pagada por las declaraciones juradas. Lo anterior deberá determinarse por el TPI, luego de que la parte apelada acredite la

razonabilidad de los mencionados gastos. El quinto error señalado fue cometido.

En cuanto a la temeridad, entendemos que el caso de marras presenta una discrepancia honesta en cuanto al derecho aplicable mediante la cual las partes se han visto en la obligación que el ordenamiento provee para vindicar sus derechos ante el foro apropiado para ello y mediante los medios de rigor. *Soc. de Gananciales v. Royal Bank de P.R., supra; Rivera v. A & C Development Corp.*; *supra.* El TPI abusó de su discreción al imponer los honorarios de abogado impugnados, por lo que se deben eliminar los mismos. El sexto y último error fueron cometidos.

## V

Por los fundamentos que anteceden, se modifica la sentencia enmendada apelada a los fines de eliminar la imposición de honorarios de abogado y ordenar la reevaluación de las costas y gastos incurridos por la parte apelada con el propósito de cotejar las que fueron necesarias. Se devuelve el caso al referido foro para procedimientos ulteriores en lo que respecta a las costas. Por lo demás, se confirma la sentencia en controversia.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 2004 DTA 136

**1.** Véase, *Escrito de Apelación,* pág. 8.

**2.** Véase, Escrito de Apelación, Índice al Apéndice #38, *Sentencia Enmendada,* al folio 255.